[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15971

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 23, 2011
JOHN LEY
CLERK

D. C. Docket No. 07-20136-CV-PAS

WALTER INTERNATIONAL PRODUCTIONS, INC.,
a Florida Corporation,
WATERVISION, INC.,
a Florida Corporation,
WALTERVISION PRODUCTIONS, INC.,
a Florida Corporation,
WALTER MERCADO RADIO PRODUCTIONS, INC.,
a Florida Corporation,
BART ENTERPRISES INTERNATIONAL, LTD.,
a Bahamas Corporation,
WALTER MERCADO ENTERPRISES CORP.,
a Florida Corporation,

Plaintiffs-Counter-
Defendants-Appellants,
Cross-Appellees,

versus

WALTER MERCADO SALINAS,
a natural person,
ASTROMUNDO, INC.,
a Puerto Rico Corporation,

Defendants-Counter-
Claimants-Appellees,
Cross-Appellant,

GUILLERMO BAKULA,

ABC INSURANCE COMPANY,
MARITZA CARVAJAL, et al.,

                                                    Defendants-Appellees.


                        _____

                  Appeal from the United States District Court
                     for the Southern District of Florida

                        _____

                           (August 23, 2011)

Before CARNES, KRAVITCH, and SILER,[*] Circuit Judges.

CARNES, Circuit Judge:

       This appeal involves a contract dispute between Bart Enterprises

International, Ltd., and Walter Mercado Salinas.  The contract describes Bart

Enterprises as being "in the business of producing and distributing entertainment

programming," and it describes Mercado as "a well-known psychic and astrologer

who provides psychic and astrological counseling to the public."  It may be true, as

the song lyrics say, that "When the moon is in the Seventh House / And Jupiter

aligns with Mars / Then peace will guide the planets / And love will steer the

_____

        [*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

2

stars,"[1] but there was no peace and love between these parties after their contractual dispute arose.

Had Mercado's psychic powers been greater he might have foreseen that the parties' relationship was star-crossed and his dealings with the entertainment company would end in a way that was anything but entertaining. Or maybe the problem was that Mercado could see only so far into the future, because things went pretty well for about eleven years. Then trouble began.

## I.

In the contract, which they entered into in June of 1995, Mercado assigned the rights in the "Walter Mercado" trademark to Bart Enterprises, giving it the right to produce, market, and distribute his trademarked materials in exchange for regular payments to him. The contract also allowed Bart Enterprises to re-assign its contractual rights, which it did to some extent.[2] (We'll refer to Bart Enterprises and its assignees collectively as "the Bart Group" unless context requires otherwise.)

The parties amicably did business together under the contract for about eleven years. Mercado's story is that trouble began when the Bart Group fell

---

[1]The 5th Dimension, "Aquarius/Let The Sunshine In," on The Age of Aquarius (Soul City Records 1969) (Remastered by Buddha Records 2000).

[2]Bart Enterprises' five assignees are Walter Mercado Radio Productions, Inc., Walter Mercado Enterprises Corp., Walter International Productions, Inc., Watervision, Inc., and Waltervision Productions, Inc.

3

behind on its payments to him, and as a result he attempted to formally terminate the contract in a letter dated November 22, 2006. The Bart Group's story is that it was not in arrears, and Mercado was the one who breached the agreement in November 2006 by failing to attend scheduled appearances, failing to provide required materials, and improperly attempting to terminate the contract.

In January of 2007 the Bart Group filed a lawsuit against Mercado and his company, Astromundo, Inc., which had sent the November 22, 2006 letter to the Bart Group attempting to terminate the parties' contract. (We will refer to Mercado and Astromundo, Inc. collectively as "Mercado.") The Bart Group's complaint concedes that "[f]rom June 1995 through the beginning of November 2006, Mercado performed his obligations and complied with all the requirements pursuant to the Agreement without interruption," but it claims that in mid-November 2006 he breached the contract.

The complaint asserted in six counts that Mercado had breached his contract with the Bart Group—one claim for Bart Enterprises and one claim each for its five assignees (Counts I & IV–VIII). It also claimed that Mercado tortiously interfered with the contracts that two of the Bart Group had with two television stations, Televisa (Count II) and Univision (Count III), by directly entering into contracts with those stations.

4

Mercado filed an answer denying liability on all of the claims and asserting a number of counterclaims. These are the only counterclaims that are relevant to the procedural history of this appeal: Mercado's claims against the Bart Group for breach of contract (Counts I and II) and his claims against Bart Enterprises for breach of fiduciary duty (Count IV) and for a declaratory judgment (Count III). In his declaratory judgment count Mercado asked the district court to find either that the contract was void or that he had properly terminated it. He also asked for a ruling that Bart Enterprises owed him fees and commissions and that he had the right to inspect "all of the accounting books and supporting documentation" to determine the amounts that he was owed.

In June 2008, these star-crossed parties filed cross-motions for summary judgment, which the district court granted in part and denied in part. The only claims of the Bart Group that survived summary judgment were the breach of contract and tortious interference claims. The only counterclaims of Mercado that survived summary judgment or dismissal were those for breach of contract and breach of fiduciary duty. The court did grant one part of the declaratory judgment that Mercado had requested, declaring that he did have a right under the contract to inspect the Bart Group's accounting books.

The claims and counterclaims that remained went to trial, which was divided

5

into two phases. In phase I, which lasted for eight days, the jury considered the Bart Group's breach of contract claim and Mercado's breach of contract and breach of fiduciary duty counterclaims. Answering questions on the verdict form, the jury found that the Bart Group had not breached the parties' contract but that Mercado had breached it by: (1) improperly terminating it; (2) hiring another exclusive agent while the parties' contract was still in force; and (3) failing to perform after November 22, 2006. The jury also found that the Bart Group owed Mercado a fiduciary duty separate and apart from the parties' contract but that it had not breached that duty to Mercado.

In phase II of the trial the jury heard evidence on and decided the Bart Group's tortious interference with contract claims against Mercado and the question of damages for his breach of contract.[1] Two days after its first verdict, the jury returned a second verdict, which also included answers to questions on the verdict form. The jury found that, although Mercado had interfered with two of the Bart Group's existing contracts with third parties, the interference was not with the intent to injure or destroy existing business relationships, so Mercado was not liable to the

---

[1] The district court stated that it divided the trial this way "to avoid the needless presentation of evidence." It reasoned that if the jury found that the Bart Group had breached the parties' contract, there could be no tortious interference claims. As it turned out, the jury did not find a breach by the Bart Group and no issue has been raised about the district court's reasoning.

Bart Group for tortious interference with its contracts. On the question of whether Mercado owed any of the Bart Group damages, the jury found that neither Bart Enterprises nor any of its five assignees had been damaged by Mercado's breach of the contract. The jury had been instructed that it could award nominal damages, but it chose not to do so. The Bart Group did not object to the verdict on inconsistency grounds, or on any other grounds, before the jury was dismissed.

The district court entered a final judgment on February 4, 2009, and the parties filed post-judgment motions. The Bart Group filed motions asking the court to: (1) amend or "correct" the judgment to clarify the parties' intellectual property rights and to add nominal damages for the Bart Group; (2) grant it a judgment including nominal damages or amend or clarify the form of the final judgment to include nominal damages; or (3) grant a new trial on the issue of nominal and actual damages; and (4) conduct a status conference. Mercado filed a renewed motion for judgment as a matter of law on the Bart Group's breach of contract claim against him and on his breach of contract and breach of fiduciary duty counterclaims. He also filed a motion to alter or amend the judgment, which had indicated that the Bart Group had prevailed "on all claims." As Mercado's motion pointed out, he had prevailed on the Bart Group's tortious interference claims. The court granted that aspect of Mercado's motion to alter or amend, but it denied the remainder of his

7

motions.

Mercado appealed the final judgment, including the summary judgment rulings against his counterclaims, but later voluntarily dismissed his appeal. Unhappy that it was not awarded any damages for Mercado's breach, the Bart Group appealed and has continued to pursue its appeal.

## II.

The Bart Group contends, on a variety of grounds, that the district court erred by denying its motion for a new trial on the issue of damages. We review the denial of a motion for a new trial only for an abuse of discretion. St. Luke's Cataract and Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1201 n.16 (11th Cir. 2009). Deference "'is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed.'" Id. (quoting Rosenfield v. Wellington Leisure Prods., Inc., 827 F.2d 1493, 1498 (11th Cir. 1987)).

## A.

The Bart Group first contends that the district court abused its discretion by imposing time constraints on the trial. Before trial began the court limited each side to 25 hours for the presentation of witnesses and other evidence at trial.[2] The Bart

---

[2]Initially, the trial court allotted 26 hours per side, but somewhere along the way that limit was trimmed to 25 hours per side. The parties agree that they were given 25 hours each, so for convenience and clarity that is the length of time we refer to throughout this opinion.

Group did not object or suggest that it was not being given enough time. During phase I of the trial, however, the Bart Group exceeded its 25 hour total time limit for both phases. Before phase II began, the district court told counsel for the Bart Group that he had already gone 26 minutes over his entire allotted time. Counsel asked for "additional time, mostly because of the translation delay."

The district court suggested giving both sides 3 more hours each for the presentation of evidence during phase II. Counsel for Mercado responded that three hours was "way too much time." Counsel for the Bart Group stated that he had three witnesses, and "I certainly can do it in three [hours]. And that is why I am willing to waive opening and just call my first witness just to get it going." The court discussed giving each side less than three hours of additional time, asking the attorneys: "So don't you think you can put on your case in two and-a-half hours?" Counsel for the Bart Group answered, "I will do my absolute best." The court stated that it believed the two sides could get it done in the total allotted time of six hours, especially because they had no interpreters in phase II. Counsel for the Bart Group agreed, responding, "We'll make it go faster." There was nothing resembling an objection or any suggestion that three hours per side was not enough for the presentation of evidence in phase II.

Despite its counsel's earlier acceptance of the time limitations, after the jury

ruled against it on damages in phase II, the Bart Group moved for a new trial on damages because its time had been limited. The district court denied the motion, pointing out that the 25 hours total that it had initially allotted for each side to present evidence was based on the attorneys' representations about how long they would need. The court added that "[u]ltimately, the trial took thirteen days, more than 30% longer than the parties had represented would be necessary, and the Court granted the parties additional time." The court believed that it had not rigidly or inflexibly adhered to the time constraints. It also noted that the Bart Group had failed to proffer any evidence or witnesses that it was unable to present to the jury because of the time limit. For those reasons, the court held that the time limits were reasonable and that the Bart Group was not entitled to a new trial on damages.

B.

A district court has the authority at a pre-trial conference to "establish[ ] a reasonable limit on the time allowed to present evidence." Fed. R. Civ. P. 16(c)(2)(O). While the district court "has an obligation to ensure a fair trial," United States v. Thayer, 204 F.3d 1352, 1355 (11th Cir. 2000), it also "has broad discretion in the management of the trial," and we will not reverse a judgment based on the court's trial management rulings "absent a clear showing of abuse." United States v. Hilliard, 752 F.2d 578, 582 (11th Cir. 1985).

The Bart Group points out that some courts have cautioned against overly rigid application of time constraints on the presentation of evidence at trial, but none of the decisions it cites actually found that a district court had abused its discretion in imposing time limits. They all recognize the discretion that district courts have to impose time limits. See, e.g., Amarel v. Connell, 102 F.3d 1494, 1514 (9th Cir. 1996) ("The case law makes clear that where a district court has set reasonable time limits and has shown flexibility in applying them, that court does not abuse its discretion."); McKnight v. General Motors Corp., 908 F.2d 104, 115 (7th Cir. 1990) ("[I]n this age of swollen federal caseloads district judges must manage their trials with an iron hand—must scrutinize the witness list and the exhibit list with a beady eye and ruthlessly prune redundant or marginal evidence. We do not reverse district judges who do this."), superseded by statute on other grounds as stated in Rush v. McDonald's Corp., 966 F.2d 1104, 1119 (7th Cir. 1992); Flaminio v. Honda Motor Co., Ltd., 733 F.2d 463, 473 (7th Cir. 1984) ("The 18 hours that the plaintiffs were given to put in their case were not an unreasonable period in relation to the complexity of the issues, and in any event the plaintiffs have failed to indicate what evidence they would have put in, or cross-examination they would have conducted, if they had had more time."). In this case the issue of time limits was waived by the Bart Group. It did not object when the court

11

initially allotted 25 hours to each side for the presentation of evidence during the entire trial. And it did not object when the court granted an extra three hours per side for the presentation of evidence during phase II; instead, counsel for the Bart Group predicted that they could "make it go faster." Only after the jury ruled against it on the issue of damages did the Bart Group object to the time limitations, raising the matter in a motion for a new trial. That is too late.

In any event, the district court did not abuse the discretion that Fed. R. Civ. P. 16(c)(2)(O) provides courts to establish a reasonable time limit for the presentation of evidence. The court was not rigid or inflexible, as shown by the fact that when the Bart Group ran over its allotted time the court gave it an extra three hours so that it could present its case in the second phase of the trial. And the Bart Group did not proffer to the district court, and has not suggested to this Court, that there was any other evidence it could have presented if it had been given more time. There was no abuse of discretion.

III.

The Bart Group contends that it is entitled to a new trial on damages because the district court abused its discretion by striking the Bart Group's six proposed expert witnesses. Five of those witnesses would have been offered as experts in the following areas: (1) intellectual property transactions under Puerto Rican law; (2)

12

forensic accounting and valuation; (3) the United States marketing industry; (4) international telecom, television, and SMS industry; and (5) Mexican marketing and artist representation. The sixth proposed expert the court struck was described as a "responsive expert." The reason the court would not allow testimony from those witnesses is that the Bart Group had failed to comply with the disclosures required under Fed. R. Civ. P. 26(a), and the failure to do so was not substantially justified or harmless.

The relevant part of Rule 26(a) provides:

(B) Written Report. Unless otherwise stipulated or ordered by the court, this disclosure <u>must be accompanied by a written report—prepared and signed by the witness</u>—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) <u>a complete statement of all opinions the witness will express and the basis and reasons for them</u>;
(ii) the data or other information considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) Time to Disclose Expert Testimony. <u>A party must make these disclosures at the times and in the sequence that the court orders</u>. Absent a stipulation or a court order, the disclosures must be made:

13

> (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
> (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(B)–(C) (2008) (emphasis added). Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Bart Group heaves the bulk of its arguments on this issue at the court's action in striking the proposed testimony of its accounting expert, Leonard M. Cusano. The Bart Group asserts that Cusano's report was timely served on Mercado and that it "complied with the spirit of" and "substantially complied with" Federal Rule of Civil Procedure 26. It argues in the alternative that even if Cusano's report did not meet the requirements of Rule 26, there were less severe sanctions that the district court could have and should have imposed.

There were a number of problems with the form and substance of the Bart Group's expert reports, including the one for Cusano. The record shows that Cusano is the only one of the Bart Group's experts whose "report"—and we are being charitable in calling it that—even arguably complied with the requirements of

14

Rule 26(a), which is why the Bart Group focuses its arguments on the exclusion of his testimony.

The court's first deadline for all expert discovery to be completed was November 14, 2007, which was extended multiple times, the last being by order of November 18, 2008, which set a final deadline of November 20, 2008 for all disclosure of expert reports to be completed. The Bart Group did not provide Mercado with an expert report for Cusano until after the close of business on the deadline day, November 20, 2008. Even then, the Bart Group did not provide a report of the type envisioned by Rule 26(a)(2)(B)–(C). Instead, it faxed to Mercado a letter stating that Cusano's services would be limited to:

A. Providing a net present value calculation of future damages claimed by Plaintiffs as of the date of the trial. I have included (attached[)] the formulas that he will be using for that function.

B. Providing a calculation of pre-judgment interest on the monetary stream of claimed past damages.

C. Rebuttal services with regard to any opinions, conclusions or applications of your damage/breach expert and/or claims or attacks upon the Plaintiffs['] damage calculations/claims.

The letter stated that counsel had "attached [Cusano's] retainer letter and scope of work statement." No curriculum vitae was attached to the materials,[3] and there was

---

[3] The Bart Group states that Cusano's CV was included with its responses to Mercado's expert witness interrogatories; however, neither the CV nor a list of publications was included with the materials sent to Mercado on November 20, 2008, as part of the final expert reports.

no expert report stating, much less explaining, Cusano's opinions as required under Fed. R. Civ. P. 26(a)(2)(B). The faxed materials did include some pages copied from a book that provided formulas for calculating present value and an unsigned page titled "Damages Report." That page listed documents that were used to produce a chart, enclosed with the fax materials, titled "Damages Summary." That summary included numbers and showed a damages "total" of $14,727,177.18. There was, however, no explanation about how that total was calculated. The materials did not constitute "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

Those shortcomings occurred despite the court's having granted one extension after another for the disclosure of expert reports and despite this unequivocal warning in its November 18 order: "If either side fails to produce expert reports by the dates set out herein, the side failing to produce the reports shall be barred from having any expert, for whom a report has not been produced, testify at trial."

We have explained that under Rule 26:

Each witness must provide a written report containing a complete statement of all opinions to be expressed and the basis and reasons therefor, as well as information about the data considered, the witness'

---

See Fed. R. Civ. P. 26(a)(2)(C) (2008) ("A party must make these disclosures at the times and in the sequence that the court orders.").

qualifications, the compensation earned, and any other recent cases in which he or she offered testimony. Any party that without substantial justification fails to disclose this information is not permitted to use the witness as evidence at trial unless such failure is harmless.

Prieto v. Malgor, 361 F.3d 1313, 1317–18 (11th Cir. 2004) (citation and quotation marks omitted). The Rule requires that the disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C) (2008).

The Bart Group asserts that any non-compliance with Rule 26 involving Cusano's report was "cured" when Mercado took Cusano's deposition on December 5, 2008, which was about a month before the trial began. According to the Bart Group, Cusano had been retained only to rebut any report and trial testimony by Mercado's accounting expert, and that limited purpose was disclosed at Cusano's December 5 deposition.

Under the schedule the court ordered, the depositions of the expert witnesses were to occur after the disclosure of their reports. Cusano's deposition was taken on the morning of December 5, and that afternoon the district court conducted a hearing addressing, among other things, Mercado's motion to strike the Bart Group's experts. At the hearing, the district court expressed its view that the materials the Bart Group had faxed to Mercado failed to satisfy the requirements of Rule 26(a). The court explained:

[I]f you have an expert, there needs to be something in writing that can

17

be used to cross-examine the witness that has his signature on it. Your sending a letter to the other side saying, "Here is the formula[ ] my expert is going to use," does not constitute a report, a statement of all the opinions.

Mercado's counsel, of course, agreed. He read to the court portions of Cusano's deposition that morning, which had been quickly transcribed and filed with the court as a rough draft before the hearing. Mercado's counsel pointed out that not only had the Bart Group failed to provide a report from Cusano that complied with Rule 26 by the November 20, 2008 deadline, but it had still failed to do so by the time Cusano's deposition was taken two weeks later on December 5, 2008. As Mercado's counsel recounted:

> [A]s of November 20th . . . there were no opinions, no memos, nothing. And through today, through this morning, when I took this gentleman's deposition, there was absolutely no report provided by him.
>
> He provided this morning a draft of some document that he says he's working on, and that he intends to use, which is basically a summary of the numbers that were provided to him in one of the items that we attached to our motion [to strike] which is titled "damage report." And he testified this morning that he took those numbers and put them in this rough draft that he's working on so that he can attempt to calculate, I think, from what he said, present value of those numbers. And that's as far as he has gotten with his draft of that report.

In an order issued on December 10, 2008, the court granted Mercado's motion to strike the Bart Group's experts, including Cusano, "for the reasons stated at the [December 5] hearing, including [the Bart Group's] failure to timely disclose

expert reports and the failure of those reports to comply with Federal Rules of Civil

Procedure 26(a)(2)(B) and 26(a)(2)(C)."[4]

On December 12, 2008, after the district court had already ruled that neither

Cusano nor any of the Bart Group's other experts would be permitted to testify at

trial, the Bart Group sent by fax to Mercado a document titled "Expert Rebuttal

Report" by Cusano. Mercado moved the district court to strike that report and

asked for sanctions; the Bart Group countered by asking the court to allow Cusano

to testify as a rebuttal witness.

Although it denied sanctions, the district court granted Mercado's motion to

strike, explaining: "The parties had plenty of time and plenty of Court granted

leeway to work out a practical schedule to exchange expert witness reports. The

parties failed to do so and now [the Bart Group] seek[s] another waiver of the

---

[4]In its order denying the Bart Group a new trial on damages based on the exclusion of the Bart Group's experts, the district court also explained that the materials provided to Mercado, even if they could have been considered reports, were not timely served on him: "The experts' reports were faxed to opposing counsel after the close of business on the date they were due and thus were not received by opposing counsel until the next business day." The district court's November 18, 2008 order imposing the deadline for disclosure of expert reports, however, simply says that the Bart Group must provide copies of their experts' reports to Mercado "by November 20, 2008." The order does not specify that the reports must be provided by "close of business" on that day. For that reason, one could argue that the district court's finding about the untimeliness of Cusano's "report" is incorrect. But it does not matter. Even assuming the materials were submitted before the deadline passed on November 20, they did not meet the requirements of a report as set out in Rule 26(a)(2)(B). For that reason, it is fair to say that the Bart Group did not timely—or otherwise— provide Mercado with expert reports at any time before Cusano was deposed on December 5, 2008.

Court's deadlines." The court refused to grant yet another waiver. It did, however, give the Bart Group something. The court permitted Cusano to be present in the courtroom during the testimony of Mercado's damages expert, Reynaldo Quinones Marquez, and allowed Cusano to advise the Bart Group's counsel about cross-examination of Quinones. The court explained that would remove any prejudice that the Bart Group would have inflicted on itself by failing to comply with Rule 26 and the court-ordered deadline for disclosure. At least it would lessen the self-inflicted prejudice.

The exclusion of Cusano and other expert witnesses did not mean that the Bart Group had no opportunity to offer evidence about damages. It did present the testimony of Marisela Carvajal, who was the bookkeeper for the companies comprising the Bart Group. In a pre-trial motion, the Bart Group had said this about Carvajal: "Marisela Carvajal, who is and has been an officer of the corporations and a hands on employee working closely with the Mercado contract, is competent to testify as to the historical data available and damages suffered." The Bart Group's president, Guillermo Bakula, also testified about damages. In those ways the Bart Group was able to present some evidence of damages.

Later, when the district court denied the Bart Group a new trial on damages, which it sought because of the exclusion of its experts, the court reiterated that the

20

materials the Bart Group had sent to Mercado in lieu of actual expert reports failed to comply with the requirements of Rule 26(a)(2). The Bart Group insisted that its failure to comply with the rule and the court's order about disclosure would not have harmed Mercado if Cusano had been allowed to testify because Mercado had deposed him before trial. As the district court explained, however, the Bart Group's defiance of the rule and order meant that Mercado "had to depose the accountant [Cusano] without the benefit of a report containing his opinions or records supporting his testimony, which was not yet final." The court reasoned that "[c]learly, being unable to adequately prepare for a deposition constitutes harm" to Mercado. It denied the motion for a new trial.

The Bart Group's failure to provide Mercado with expert reports within the meaning of Rule 26(a) violated that rule and the court's orders. The violation was not "substantially justified," Fed. R. Civ. P. 37(c)(1); indeed, there was no justification for it. Nor was the violation "harmless." Id. The reason for requiring that an expert report be provided before a deposition is taken is so the opposing party can use the report to examine the expert at the deposition. As the district court pointed out, it is harmful to deprive opposing counsel of the expert's report before his deposition. The district court did not abuse its discretion when it excluded the testimony of Cusano and the Bart Group's other experts. See Romero

21

v. Drummond Co., 552 F.3d 1303, 1324 (11th Cir. 2008) ("The plaintiffs failed to provide any sufficient disclosures 'as required by Rule 26(a),' before the deadline, so they could not offer any expert witnesses at trial.") (quoting Fed. R. Civ. P. 37(c)(1)).

## IV.

The Bart Group contends that the district court abused its discretion by striking its "Contingent Witness List" of lay witnesses, thereby preventing it from calling any of them to testify. The Bart Group, which prevailed on its breach of contract claim against Mercado in phase I of the trial, argues that the court's error in striking that witness list entitles it to a new trial on the phase II issue of damages.[5]

## A.

The Bart Group's "First Amended Witness List" was filed on April 3, 2008. That document states that it amends "the Initial Witness List" filed on September 4, 2007, but there is no district court docket entry for the initial list and the list itself is

---

[5]In arguing that it is entitled to a new trial, the Bart Group's initial brief to this Court makes nothing more than a passing reference to its tortious interference with contract claims, and it did not ask the district court for a new trial on those claims, so any argument about them is waived. See ,e.g., Old W. Annuity & Life Ins. Co. v. Apollo Grp., 605 F.3d 856, 860 n.1 (11th Cir. 2010) (holding that an issue presented in passing without "substantive argument" in appellate brief was waived); Gipson v. Jefferson Cnty. Sheriff's Office, 613 F.3d 1054, 1056 n.3 (11th Cir. 2010) (holding that an argument not presented to district court was waived on appeal).

22

not in the record.[6]  The witnesses on that amended list start with number 25,

apparently picking up where the initial list left off.  On May 9, 2008, the Bart Group

filed its "Second Amended Witness List," adding one witness to those listed on the

first amended list.

On December 9, 2008, the parties filed a joint pretrial stipulation. As

attachments to that stipulation, the Bart Group submitted three separate documents.

All three of those documents were titled "Plaintiff's Witness List," but each one had

a different subtitle:  "Plaintiff's Trial Witnesses," "Plaintiff's Contingent

Witnesses," and "Potential Rebuttal Witnesses."

On December 18, 2008, the district court ordered the parties to file "final"

---

[6]On May 21, 2007, the court issued an order setting the trial date, pretrial deadlines, and referral to a magistrate judge.  In that order the court set September 4, 2007, as the deadline for the following:

> Parties shall furnish opposing counsel with a written list containing the names and addresses of all fact witnesses intended to be called at trial and only those witnesses listed shall be permitted to testify unless good cause is shown and there is no prejudice to opposing party.  The parties are under a continuing obligation to supplement discovery responses within ten (10) days of receipt or other notice of new or revised information.

At oral argument counsel on both sides were unable to provide factual information from the record about the witness lists, and our excavation of the record revealed no initial witness list.  It appears that an initial list was "furnish[ed] opposing counsel" as the district court directed in its May 21, 2007 order, but it was not filed with the court.  At a pretrial conference on December 22, 2008, counsel for Mercado told the court that "the first plaintiff's fact witness list that they filed was sent to my office by [another lawyer who was representing the Bart Group at that time]."  Counsel stated:  "That [list] was not filed with the Court, Judge, but I do have a copy of it.  That one is dated the 4th day of September, 2007."  We are able to decide this issue without a copy of the initial witness list.

witness lists by December 22, 2008:

> Witness Lists: The Parties shall jointly confer in an effort to reduce the number of trial witnesses. The parties are required to provide revised, final witness lists in two forms—one to be handed to the venire panel members to assist in recognition of any potential witnesses, and the second to assist the parties and the Court to determine the time a witness will be on the stand. The first list of witnesses for the venire panel should provide the full name of the witness and any identifying information, such as area of residence or employment affiliation, to help the prospective jurors determine whether they recognize a potential witness. <u>The second form of witness list should state</u> each testifying witness, provide a one sentence synopsis of the witness' anticipated testimony (the synopsis may be omitted for Guillermo Bakula and Walter Mercado-Salinas), and <u>in consultation with opposing counsel, state the amount of time needed for direct and cross-examination</u>. The parties must file these two lists on or before **December 22, 2008 at noon**. <u>The Court shall hold the parties to the time allocated for each witness</u>.

(some emphasis added).

On December 22, 2008, the Bart Group filed a document titled "Notice of Filing Plaintiffs' Revised Witness Lists," which stated that it included a "synopsis of testimonies and time required for direct and cross examination, as ordered by [the] Court on December 18, 2008." What was included was two separate documents that were both titled "Plaintiff's Witness List." Each had its own subtitle: "Plaintiff's Trial Witnesses" and "Plaintiff's Contingent Witnesses." In accordance with the district court's December 18 order, the Bart Group's "Trial Witnesses" list included a statement of the amount of time needed for direct and

24

cross-examination for each witness. Its "Contingent Witnesses" did not include that required information.

On the same day that the Bart Group filed those two lists of witnesses, Mercado filed a "Motion to Strike [the Bart Group's] Contingent Witness List and Witnesses Listed on Plaintiffs' Trial Witness List and for Sanctions." That motion stated as grounds that the Bart Group's "Contingent Witness List" violated the court's December 18 order, "which require[d] the parties to file final witness lists," and that it "list[ed] witnesses that have never been disclosed." Mercado's motion identified the following witnesses on the Bart Group's contingent witness list as those that had "never been disclosed":

Stephanie Shulman, Esq.
Ray Rodriguez
Gabriel Reyes
Jimmy Autran
Joaquin Balya
Ricardo Queiros

The motion also pointed out that the Bart Group's contingent list included "Pablo Camarena [who] was stricken by this court's Order [DE 281], and also Scott Orth, [the Bart Group's] counsel." Mercado asserted that the Bart Group's "lists are improper and have been filed simply to harass [Mercado] and to waste the Court's time."

25

On the afternoon of December 22, 2008, the same day that the witness lists and Mercado's motion to strike were filed, the court conducted a pretrial conference. On the subject of the Bart Group's contingent witness list, the following exchange occurred between counsel for the Bart Group and the court:

THE COURT: . . .

I need for you to help the Court, [Counsel], not hinder the Court, by doing things that I have instructed you not to do. And it comes across with a bit of hubris on your part.

[COUNSEL]: I'm sorry. I was trying to help the Court by separating the witnesses into two lists.

THE COURT: When I have ruled on someone and you go ahead and add it again, it sort of seems to say something that is probably not well-reflective of your—

[COUNSEL]: Are you referring to Pablo Camarena? Is that the witness?

I'm lost as to what exactly we were referring to. If it is with regard to Pablo Camarena, you struck his lay opinions but you did not strike him as a witness. And he was actually for a time employed by the plaintiff corporations with respect to the Mercado mark. So that is why I had him as a contingent witness solely as to personal knowledge of facts, not as to any lay opinion that you struck.[7]

THE COURT: Okay.

[COUNSEL]: So I did not mean any disrespect.

---

[7]Actually, the district court's December 10 order struck Camarena as an expert witness because the Bart Group had not disclosed to Mercado the expert witness reports and information required by Rule 26(a) and by the court's order.

26

THE COURT:  I am going to grant the motion.  The contingent witness list is stricken.

[COUNSEL]:  In its entirety?

THE COURT:  I needed the parties to be very self-disciplined and tell me who is going to testify, how much time on direct and cross.

You've got to make choices at this point, [Counsel].  But you now have 26 hours [to put on all witnesses at trial], and that will help you. But anyone that is on the contingent witness list will not be called.

On December 23, 2008, the day after the final pretrial conference, the district court issued an order that, among other things, granted Mercado's motion to strike the contingent witness list, but denied his request for sanctions against the Bart Group.

B.

Rule 26 requires the pretrial disclosure of "the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises."  Fed. R. Civ. P. 26(a)(3)(A)(i).  As for the timing of these disclosures, Rule 26 provides that "[u]nless the court orders otherwise, [they] must be made at least 30 days before trial."  Fed. R. Civ. P. 26(a)(3)(B).  Rule 26(a) does not strip the district court of its authority to manage trials and to impose different requirements for the disclosure of witnesses where reasonable, including requiring parties to submit final, non-contingent witness lists.

27

A district court has broad authority "to control the pace of litigation before it." Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). Similarly, the Ninth Circuit has explained:

> We begin with the principle that the district court is charged with effectuating the speedy and orderly administration of justice. There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly.

United States v. W.R. Grace, 526 F.3d 499, 508–09 (9th Cir. 2008) (en banc); see also Chrysler Int'l, 280 F.3d at 1360 ("Given the caseload of most district courts and the fact that cases can sometimes stretch out over years, district courts must have discretion and authority to ensure that their cases move to a reasonably timely and orderly conclusion."); Johnson v. Bd. of Regents, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling.").

The Bart Group argues that the contingent witness list caused no prejudice to Mercado and that striking it unfairly limited the presentation of its case in phase II of the trial. The Bart Group did not, however, make any offer of proof to the district court in the December 22 hearing. It said nothing at all about the testimony that the witnesses on the contingent list could give or how that testimony would

28

help prove its entitlement to damages in phase II of the trial. Cf. Murphy v. City of Flagler Beach, 761 F.2d 622, 626 (11th Cir. 1985) ("The purposes of the contemporaneous objection and proffer requirements of Fed. R. Evid. 103(a) are to give the trial judge a chance to correct errors which might otherwise require a new trial and to give [her] a chance to reevaluate [her] ruling in the light of the evidence to be offered and to allow the reviewing court to determine if the exclusions affected the substantial rights of the party offering it."); United States v. Stokes, 506 F.2d 771, 777 (5th Cir. 1975)[8] (holding that the exclusion of a witness' testimony was not prejudicial to defendant where the offer of proof showed that it would be cumulative). Nor do the Bart Group's briefs to this Court explain how the "contingent" witnesses could have helped it prove damages from Mercado's breach of contract.

The district court's December 18, 2008 order requiring the parties to file one "final" witness list on December 22, 2008 for a trial that was set to begin on January 8, 2008 was not an abuse of discretion. The order's requirement that the witness list include the amount of time needed for direct and cross-examination of each witness was not an abuse of discretion. Under the circumstances we have

---

[8]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

described, the district court's December 23, 2008 order striking the Bart Group's non-complying contingent witness list, while leaving its other witness list in place, was not an abuse of discretion.

V.

The Bart Group also contends that it is entitled to a new trial on damages because the jury's verdict awarding no damages was contrary to the great weight of evidence at trial. This argument centers on two exhibits the Bart Group introduced at trial showing income and expense summaries from 2005 to 2008 for five of the corporate plaintiffs. It argues that the income summaries show a "precipitous drop" from November 2006, which is the date that Mercado breached the parties' contract.

Even though the Bart Group asserts that the evidence about the loss of income was "uncontested," it acknowledges that Mercado's accounting expert, Reynaldo Quinones Marquez, testified that in his view the documents showed that the Bart Group had been operating at a net loss and suffered no damages as a result of Mercado's breach of the contract. Executives for the Bart Group testified in favor of one set of inferences from the evidence, while Mercado's expert testified in favor of opposing inferences. The inferences to be drawn from the documents were contested. The conflicting testimony presented a jury issue. See Graphic Prods. Distribs., Inc. v. ITEK Corp., 717 F.2d 1560, 1582 n.41 (11th Cir. 1983) ("The jury

as factfinder, assisted by counsel, must judge the credibility of witnesses, resolve conflicting evidence and claims, and assess the weight to be given damages testimony."). And as the district court explained, the weight of the evidence was not contrary to the jury's finding that Mercado had not proximately caused any damages to the Bart Group because: "[T]he jury could have chosen not to accept the evidence [the Bart Group] presented as much of the damage evidence was prepared by [the Bart Group] for trial and [it] proffered few, if any, original documents in support of [its] damages claims."

"Our scope of review of sufficiency of the evidence after denial of a motion for new trial asserting that ground is very narrow; the trial court's denial must have been an abuse of discretion." Saunders v. Chatham Cnty. Bd. of Comm'rs, 728 F.2d 1367, 1368 (11th Cir. 1984). Considering the evidence as a whole, the conflicting inferences that could be drawn from it, and the credibility issues presented by the testimony of the witnesses, the district court did not abuse its discretion by refusing to grant the Bart Group a new trial on damages based on the sufficiency of the evidence.

VI.

The Bart Group also contends that it is entitled to a new trial because of a comment the judge made to the jury in phase II of the trial. After instructing the

31

jury on the law, the district court closed with these words:

> On behalf of everyone, thank you so very much for your patience and your good humor and your attention.  It has really been a pleasure working with you all.  God speed and may you have the judgment of Solomon.

Then the court sent the jury out to deliberate.  No one objected to that remark, probably because it seems so unobjectionable.

Nonetheless, in its motion for a new trial on damages the Bart Group contended that the district court's benedictory remarks violated its rights, not by wishing the jury "God speed," but by expressing the hope that the jury would have "the judgment of Solomon."  The district court responded to that argument, when it belatedly appeared in the motion for a new trial, this way:

> Plaintiffs' motion lists an additional error:  the Court's comment to the jury to "have the wisdom of Solomon."  Overlooking the fact that Plaintiffs did not object to the statement at trial, Plaintiffs have not presented any argument or authority in support of their contention that this remark was improper.  Therefore, the Court will not address it.

The problem, the Bart Group argues, is that the remark refers to "splitting the baby" and the jury might have thought that it was being urged to decide the breach of contract damages issues in favor of Mercado since it had found the liability issues in favor of the Bart Group—to split the case down the middle and give each side half.

The Bart Group's argument reflects a misunderstanding of scripture that is

32

almost biblical in proportions. When two women each swore to be the mother of a child, King Solomon did not split the baby. Instead, he announced his intention to do that in order to flush out the truth. See 1 Kings 3:16-28. Confronted with the prospect of the baby being split with a sword, the woman who had falsely claimed the child responded with the Old Testament equivalent of "let 'er rip," while the woman who had borne the child begged Solomon not to slay the child even if it meant that she would lose it to the other woman: "[G]ive her the living child, and in no wise slay it," she pleaded. Id. at 3:26 (King James Version). Solomon was wise enough to know that a mother would rather lose her child to another than have it slain, and so he gave the child to the woman begging for its life to be spared. Id. at 3:27. And all of Israel was in awe of his wisdom. Id. at 3:28.

In this case the judge did not instruct the jurors to split the baby. Instead, she wished them the judgment of Solomon. A jury blessed with the judgment of Solomon would be wise in discerning the truth. Agreeing with the district court, we wish such wisdom on every jury. Even if the Bart Group had not waived any issue about the court's remark, there is nothing wrong with what the court said.

VII.

The Bart Group contends that the district court erred by denying its renewed motion for judgment as a matter of law or in the alternative to alter or amend the

33

judgment to include nominal damages or for a new trial on the issue of damages. It argues that Florida law entitles it to an award of nominal damages based on the jury's phase I verdict that Mercado had breached the parties' contract.

Florida law does require an award of at least nominal damages if a breach of contract has been established. See MSM Golf, L.L.C. v. Newgent, 853 So. 2d 1086, 1087 (Fla. 5th DCA 2003). In MSM Golf the court held that "[a]t the very least, [the plaintiff] was entitled to nominal damages once the jury found that the contracts had been breached by [the defendant]." Id. at 1087.[9] Similarly, in Onontario of Fla., Inc. v. R. P. Trucking Co., 399 So. 2d 1117 (Fla. 4th DCA 1981), the appellate court reversed the trial court's judgment granting a directed verdict for the defendant when the plaintiff failed to prove any actual damages on its breach of contract claim. Id. at 1118. A new trial was necessary in that case because the plaintiff was "entitled to nominal damages once the breach of contract had been established, notwithstanding the absence of evidence regarding the correct measure of damages." Id.; see also Price v. S. Home Ins. Co., 129 So. 748, 751 (Fla. 1930) (reversing directed verdict for the defendant insurance company because "[h]aving

---

[9]In MSM Golf the court determined that the jury verdict finding breach of contract but awarding no damages was inconsistent; however, "[t]he issue of whether the aggrieved party is obligated to object to the verdict prior to the discharge of the jury [was] not raised in [that] appeal." Id. at 1086 n.1. The appellate court concluded that "once the trial court specifically recognized the patent inconsistency of the verdict, it was the court's obligation to order a new trial." Id. at 1087.

34

declared on the policy and shown the destruction in part by fire of the building

insured [the plaintiff] was entitled to nominal damages, so the directed verdict was

error"). A Florida Fifth District Court of Appeal decision has also held that a

plaintiff who proves breach of contract is entitled to nominal damages if it cannot

prove lost profits:

> [T]his court previously recognized that Schopke had proved that IRCC breached the contract in the prior trial. Therefore, Schopke would be entitled to nominal damages for the breach of contract by IRCC. See Continuum Condominium Ass'n. v. Continuum VI, Inc., 549 So. 2d 1125 (Fla. 3d DCA 1989); Zayre Corp. v. Creech, 497 So. 2d 706 (Fla. 4th DCA 1986); Muroff v. Dill, 386 So. 2d 1281 (Fla. 4th DCA 1980), rev. denied, 392 So. 2d 1377 (Fla. 1981). See also U.S. Home Corp. v. Suncoast Utilities, 454 So. 2d 601 (Fla. 2d DCA 1984) (nominal damages appropriate where plaintiff fails to prove lost profits in breach of contract action); Beverage Canners, Inc. v. Cott Corp., 372 So. 2d 954 (Fla. 3d DCA 1979) (nominal damages appropriate in breach of contract action where plaintiff failed to prove lost profits). Consequently, the trial court properly denied IRCC's motion for a directed verdict at the close of Schopke's case.

Indian River Colony Club, Inc. v. Schopke Constr. & Eng'g, Inc., 619 So. 2d 6, 8

(Fla. 5th DCA 1993).

In Zim v. Western Publishing Co., 573 F.2d 1318 (5th Cir. 1978), our

predecessor court held that "[u]nder Florida law, nominal damages . . . are

recoverable upon a finding of breach of contract even though no proof of further

damages is made out." Id. at 1326 (footnote omitted). To support that

35

interpretation of Florida law, Zim cited Hutchison v. Tompkins, 259 So. 2d 129

(Fla. 1972), which held that "[i]t is well established in Florida that where the

allegations of a complaint show the invasion of a legal right, the plaintiff on the

basis thereof may recover at least nominal damages, and a motion to dismiss should

be overruled." Id. at 132. The Zim opinion also explained that "[a]lthough an

appellate court will ordinarily not reverse because of a failure to award nominal

damages, where costs have been awarded against the appellant, reversal is

required."[10] 573 F.3d at 1326. Under Florida law if a jury returns a special verdict

finding breach of contract along with a special verdict awarding no nominal

damages, those verdicts are inconsistent. See MSM Golf, 853 So. 2d at 1087.

The problem for the Bart Group is that it did not object to the jury's verdict

on damages on the basis of inconsistency (or anything else) before the jury was

discharged. The verdicts in the present case are best described as hybrid general

and specific verdicts. The jury found in favor of one party or the other on each

claim, and those findings were coupled with answers to written interrogatories. See

Mason v. Ford Motor Co., 307 F.3d 1271, 1274 (11th Cir. 2002) ("[T]he Rule 49(b)

verdict providing for a general verdict coupled with answers to written

interrogatories, is a hybrid of the general and special verdicts."). We have held that

---

[10]In the present case, however, the district court has already awarded costs to the Bart Group—not against it.

36

if the party challenging this type of verdict has failed to object before the jury is discharged, that party has "waived the right to contest the verdicts on the basis of alleged inconsistency." Id. at 1275–76. Florida law applies essentially the same rule. See Grossman v. Sea Air Towers, Ltd., 513 So. 2d 686, 689 (Fla. 3d DCA 1987) ("[F]ailure to object to the obvious inconsistency in the jury verdict constituted a waiver.").

The Bart Group did not challenge the verdicts in this case as inconsistent until it filed a post-trial motion seeking either judgment as a matter law, an order altering or amending the judgment, or a new trial on damages. In that motion the Bart Group argued, among other things, that the jury's phase II verdict awarding no damages was "inconsistent" with its phase I verdict finding that Mercado was liable to the Bart Group for breaching the parties' contract. By then the jury was long gone. Because the Bart Group did not object to the verdicts as inconsistent before the jury was excused, that issue has been waived. See Mason, 307 F.3d at 1275–76.

## VIII.

Advancing the argument that the whole is greater than the sum of its parts, the Bart Group contends that all of the district court's "errors" add up to an abuse of discretion that justifies granting a new trial. Because we have determined that there

were no errors constituting an abuse of discretion, there was no accumulation of error either.[11]

The Florida District Court of Appeal decision that the Bart Group relies on does not suggest otherwise. See Carnival Corp. v. Pajares, 972 So. 2d 973, 979 (Fla. 3d DCA 2007) ("While we recognize that a single improper remark or argument might not be so prejudicial as to require reversal, we conclude that the cumulative prejudicial effect of the improper comments noted herein requires a new trial to protect the overall fairness of the trial court proceedings, and to ensure that [the defendant] receives a fair trial."). In the Carnival Corp. case, the court determined that there were a number of improper remarks made by plaintiff's counsel, and they added up to create a prejudicial effect that warranted a new trial. See id.

Here, by contrast, the Bart Group has not shown that any of the challenged

_____

[11]The Bart Group also took issue with this statement in the district court's summary judgment order: "Upon termination by either Bart [Enterprises] or Mercado, the assignment of materials, transfer of rights in the materials, and the assignment of the trademark would revert back to Mercado because the Term would end." It is clear from the statement's context in the district court's opinion that it is dicta and not a holding, and we do not review statements made in dicta. See United States v. $242,484.00, 389 F.3d 1149, 1153 (11th Cir. 2004) (en banc) ("A bedrock principle upon which our appellate review has relied is that the appeal is not from the opinion of the district court but from its judgment.") (quotation marks omitted). In any event, Mercado agreed at oral argument that the challenged statement in the district court's order is non-binding dicta, and it stated to this Court that it will not rely on the statement in other litigation between the parties for res judicata or collateral estoppel purposes. In light of that concession, the Bart Group's arguments about that statement are moot.

rulings by the district court constituted an abuse of discretion.   Nothing plus nothing is nothing, just as "nothing from nothing leaves nothing."[12]

   **AFFIRMED.**

---

[12]Billy Preston, "Nothing from Nothing," on <u>The Kids and Me</u> (A&M Records 1974).