[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11717

_____

SPRINT COMMUNICATIONS, INC.,

Plaintiff-Counter Defendant,

SPRINT COMMUNICATIONS LLC,

Plaintiff-Appellee,

*versus*

STEPHEN CALABRESE, et al.,

Defendants-Counter Claimants,

RETROBRANDS USA LLC,
JEFFREY KAPLAN,
NEXTEL MOBILE WORLDWIDE INC.,

2                          Opinion of the Court                  22-11717

Defendants-Counter Claimants-Appellants.

—————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-60788-JEM

—————————————

Before WILSON, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Sprint owns trademarks for a "Nextel" word mark when used with telecommunication equipment, and a sound mark for the Nextel "chirp" noise for use with telecommunication services. Stephen Calabrese began selling cell phones under the Nextel name and used the chirp sound. After receiving a cease-and-desist letter, Calabrese partnered with Jeffrey Kaplan and Retrobrands USA LLC to expand sales of his "Nextel" branded devices. Sprint brought a successful trademark infringement lawsuit regarding these two marks. After a careful review of the record and with the benefit of oral argument, we **AFFIRM**.

**I.**

Nextel Communications, Inc. created push-to-talk technology allowing users to press a button, speak, and immediately be heard by others in a group. Nextel first developed the "Nextel" word mark (Reg. No. 1,884,244) and chirp sound mark (Reg. No.

5,047,282) at issue in this case.[1]  Nextel merged with Sprint in 2005 to form "Sprint Nextel."  "Sprint Nextel" became "Sprint" in 2013. Sprint merged with T-Mobile in 2020.  T-Mobile now owns the Nextel word mark and chirp sound mark.

Nextel's push-to-talk devices and services have been used by first responders and other people working in public safety roles. These devices used a priority service, which allowed calls to go through stadiums or events with congested networks.  Rather than market to individual consumers, Sprint markets push-to-talk services to business consumers at trade shows.

In 2016, Calabrese started selling cell phones using the company name "Nextel, Inc." and doing business as "Nextel Worldwide."  Through an online search for "Nextel" in 2016, Calabrese found both the Wikipedia page saying Nextel Communication continued as a subsidiary of Sprint and a Sprint webpage offering push-to-talk phones under the "Nextel" name.  Nonetheless, Calabrese appeared at a 2017 trade show selling "Nextel" devices.  In response, Sprint sent Calabrese a cease-and-desist letter demanding that Calabrese stop using the Nextel name and the domain "nextel-worldwide.com."  Calabrese told Sprint he had stopped when, instead, he had actually partnered with Kaplan to expand.

Kaplan owns Retrobrands, a company that "revives" iconic consumer brands.  Kaplan knew that Calabrese had received a

---

[1] We refer to these as the "Nextel word mark" and "chirp sound mark," respectively, throughout this opinion.

cease-and-desist letter in which Sprint claimed to own valid and subsisting rights in the Nextel word mark.  Kaplan's own research indicated that Sprint renewed its rights in the Nextel Mark with the United States Patent and Trademark Office (USPTO) in 2015. Kaplan also reviewed the following: Sprint's 2013 statements that it would shut down Nextel's network; Sprint's financial disclosures; and records showing the cancellation of some Nextel trademark registrations.  Kaplan and Calabrese's companies entered a licensing agreement to build and later sell a company using "the famous and iconic trademark NEXTEL."  Kaplan tried to register both the "NEXTEL" name and the Nextel chirp, but the USPTO denied both applications due to potential consumer confusion with Sprint's registered trademarks.

Even without registered marks, Kaplan and Calabrese used their Nextel materials to advertise and sell mobile devices and wireless services to the same consumers Sprint targeted.  Kaplan and Calabrese did not make devices or own a network.  They resold cheap phones with "NEXTEL" stickers.  These phones could not access the priority services target customers need.  Their advertisements used phrases like "Nextel is back" and domain names like "nextelisback.com."  These sites redirected to "nextelmobileworldwide.com," which disclosed it was not affiliated with Sprint.  Under the licensing agreement, Kaplan made $40,000 to $50,000.  When marketing to investors, Kaplan advertised the company as being worth $100 million.

Sprint initiated these proceedings, asserting claims against Kaplan, Calabrese, and their companies, Retrobrands USA LLC, Nextel, Inc., and Nextel Mobile Worldwide, Inc. (collectively, Defendants) for infringement, unfair competition, false designation of origin, dilution, counterfeiting Sprint's Nextel word and chirp sound marks, and cybersquatting. Defendants responded with fraud and abandonment affirmative defenses and a counterclaim of tortious interference.[2]

At trial, the district court found no evidence to support the abandonment of the chirp sound mark and granted judgment as a matter of law to Sprint on that defense. The district court left the jury to decide whether Sprint abandoned the Nextel word mark. The jury returned a verdict for Sprint on all counts—Sprint had not abandoned the Nextel word mark; Defendants infringed, counterfeited, unfairly competed with, and were likely to dilute the Nextel word mark; Defendants committed cybersquatting regarding the Nextel word mark; and Defendants infringed, counterfeited, and unfairly competed with the chirp sound mark. The jury found $4.5 million in statutory damages ($2 million for counterfeiting the Nextel word mark; $2 million for counterfeiting the chirp sound mark; $500,000 for cybersquatting). The jury found an additional $5.2 million in disgorgement damages.

After the jury returned its verdict, the district court entered judgment in Sprint's favor. Sprint ultimately elected statutory

---

[2] Calabrese is not a party to the appeal.

damages, which the district court awarded.  Separately, the district court issued a permanent injunction against Defendants and ordered Defendants to transfer the remaining infringing domain names to Sprint and abandon applications to register their marks with the USPTO.  The district court denied Defendants' motion for stay or, alternatively, motion for extension of time, and Defendants' motion to vacate the permanent injunction.

Kaplan, Nextel Mobile Worldwide, Inc., and Retrobrands (collectively Retrobrands) timely appealed.  On appeal, Retrobrands argues (1) Sprint lacks standing; (2) Sprint abandoned the Nextel word mark and chirp sound mark; (3) the marks were insufficiently famous for a dilution claim; (4) Sprint did not make a timely election of statutory damages; and (5) the district court abused its discretion in granting a permanent injunction.  We address each argument in turn.

## II.

"Whether a plaintiff has standing to sue is a threshold jurisdictional question that we review *de novo*." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1238 (11th Cir. 2023).  Standing consists of three components: (1) a "concrete and particularized . . . and [] actual or imminent" injury; (2) traceability between the injury and the conduct at issue; and (3) redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Here, Sprint holds valid trademarks that Retrobrands cannot use, the actions of Retrobrands caused the infringement harm, and a favorable decision would redress Sprint's alleged harm.  This suffices for standing.  *See Royal Palm Props., LLC*

*v. Pink Palm Props., LLC*, 950 F.3d 776, 787 n.6 (11th Cir. 2020).  Recognizing standing, we move to the merits.

## III.

We review a renewed judgment as a matter of law de novo and draw all inferences in the light most favorable to the nonmoving party.  *Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735, 744 (11th Cir. 2020).  Judgment as a matter of law is only appropriate when a plaintiff "presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action."  *Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006).  Separately, we review denials of motions for new trials for an abuse of discretion.  *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1407 (11th Cir. 2011).  Our deference is "particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed."  *Id.* (quotations omitted).

Abandonment is an affirmative defense available against allegations of trademark[3] infringement.  *See* 15 U.S.C. § 1127. A mark is abandoned "[w]hen its use has been discontinued with intent not to resume such use."  *Id.*  A trademark holder must make a "bona fide use of a mark."  *Id.*  "Nonuse for 3 consecutive years shall be

---

[3] Under the Lanham Act, "trademark" refers to "any word, name, symbol, or device, or any combination thereof [] (1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods."  15 U.S.C. § 1127.

prima facie evidence of abandonment." *Id.* If a defendant can show a prima facie case of abandonment, the burden of production shifts to the plaintiff, but the burden of persuasion remains with the defendant. *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1176–77 (11th Cir. 2002). Abandonment is a factual question. *Id.* at 1174. "[W]e require strict proof" to find abandonment. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 (11th Cir. 1984).

The Anticybersquatting Consumer Protection Act prohibits registering or using domain names when at the time of registration, the domain name is "identical or confusingly similar to" a mark at issue and the person creating the cybersquatting domain name "has a bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A).

Under de novo review and our strict standard for finding abandonment, Sprint did not abandon either mark at issue, which also supports the jury finding for Sprint on its cybersquatting claim.

Retrobrands repeatedly emphasizes the variety of Nextel marks Sprint abandoned or cancelled. These do not matter because abandonment is specific to a mark and its particular use. Here, the Nextel word mark at issue does not require a specific font or stylization, and its registration relates to use with telecommunication equipment. Similarly, the chirp sound mark relates to

telecommunication services.  We only review the use of these two marks related to telecommunications equipment and services.[4]

Sprint's testimonial and physical evidence suffice to show continuous use of both marks during the relevant three years.  At trial, a former Sprint executive testified that Sprint continued to use the Nextel word mark on packaging when selling the Sonim Strike XP from 2013 to 2018.  Sprint also introduced a Sonim Strike XP package from 2013 featuring the Nextel word mark.  Sprint's witnesses testified that they continued to use the chirp sound mark in their devices and in promotional presentations.  Calabrese started using his Nextel mark in 2016 and appeared at the same 2017 tradeshow where Sprint used its Nextel word mark.  Without three years of nonuse, Sprint did not abandon either mark.  Absent a prima facie case, the remaining evidence does not support abandonment by Sprint.

Further, without abandonment, Retrobrands lacks a good faith defense for its cybersquatting claim.  The cease-and-desist letter, independent internet searches showing Nextel products on Sprint's website, and the USPTO's decision not to grant Kaplan a

---

[4] Retrobrands submitted a motion to take judicial notice of Related USPTO Nextel Records: (1) USPTO TESS search dated May 2, 2023, listing 82 entries of Nextel marks as abandoned or dead; (2) USPTO webpage for a Nextel Black and Gold logo listed as dead; (3) USPTO webpage for a "Nextel Direct Connect Mark" listed as dead; and (4) USPTO webpage for "Sprint Together with Nextel Mark" listed as dead.  We deny Retrobrands' motion to take judicial notice of these records because they each relate to marks that are not at issue in this appeal.

trademark because his marks were confusingly similar to Sprint's marks all combine to support finding Retrobrands lacked good faith.

The jury found that Sprint had not abandoned the word mark or the sound mark and found in Sprint's favor on the cybersquatting claim. We decline to disturb the jury's verdict given our finding that there was sufficient evidence to support such a verdict.[5]

## IV.

We review Lanham Act damage awards for an abuse of discretion. *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988) (per curiam). The Lanham Act outlines specific statutory damages for using counterfeit marks—either between $1,000 and $200,000 per counterfeit mark or up to $2 million per counterfeit mark when its use was willful. 15 U.S.C. § 1117(c). Cybersquatting in violation of § 1125(d)(1) can carry statutory damages of between $1,000 and $100,000 per domain name, "as the court considers just." *Id.* at § 1117(d). Both provisions allow plaintiffs to elect damages "at any

---

[5] On appeal, Retrobrands also argued that the district court erred by denying its renewed motion for judgment as a matter of law regarding dilution. Retrobrands argued that Sprint did not present sufficient evidence that its marks were famous enough or had sufficient recognition for a successful dilution claim under 15 U.S.C. § 1125(c). It may not be that the marks at issue are sufficiently famous for a dilution claim. But the statutory damages Sprint received only relate to its counterfeiting and cybersquatting claims. As the following subsections explain, neither the monetary nor injunctive relief Sprint received requires finding in its favor on the dilution claim. Therefore, the district court's error in allowing the jury to return a verdict on the dilution claim was harmless.

time before final judgment is rendered by the trial court." *Id.* at § 1117(c), (d).

Sprint's complaint requested both statutory and actual damages. The jury calculated awards for several categories, which included the maximum amounts for each statutory award: $2 million for counterfeiting the Nextel word mark; $2 million for counterfeiting the chirp sound mark; and $500,000 for cybersquatting. Sprint elected the $4.5 million of statutory damages rather than $5.2 million in actual damages before the district court had ruled on its motion for a permanent injunction. Sprint's election occurred before the ultimate final judgment. The district court did not abuse its discretion in awarding the statutory damages calculated by the jury.

## V.

We review the granting of a permanent injunction for an abuse of discretion. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008). To receive a permanent injunction, a plaintiff must show:

> (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

*Id.* A plaintiff seeking a permanent injunction is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection." 15 U.S.C. § 1116(a).

As a threshold matter, Retrobrands argues that the district court lacked jurisdiction to enter a permanent injunction. Generally, a district court no longer has jurisdiction over a case once a party enters a notice of appeal. *In re Mosley*, 494 F.3d 1320, 1328 (11th Cir. 2007). After a party files a notice of appeal, a district court retains jurisdiction over things that could help the appellate court exercise its jurisdiction. *Id.* Filing a premature notice of appeal does not strip the district court of this jurisdiction. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982) (per curiam). Retrobrands decided to file the notice of appeal one day after filing a motion for reconsideration of the judgment. Filing both motions meant the district court did not yet have an opportunity to rule on the motion for reconsideration, which made Retrobrands' first notice of appeal premature.

Ultimately, the district court properly entered a permanent injunction. Because Retrobrands violated the Lanham Act, Sprint was entitled to a rebuttable presumption of irreparable harm. The circumstances satisfy the remaining prongs for granting a permanent injunction. Remedies at law are inadequate to address the harm of confusion that would arise without the injunction. Given the finding of infringement and counterfeit, the balancing of interests weighs heavily in Sprint's favor. Finally, entering a permanent injunction benefits the public interest by preventing confusion

among first responder consumers of push-to-talk devices. Retrobrands' phones lack the priority service that first responders associate with "Nextel" products. The district court did not abuse its discretion by entering a permanent injunction.

**AFFIRMED.**