JILL PRYOR, Circuit Judge:
A jury awarded the Equal Employment Opportunity Commission (the "EEOC") and Contrice Travis back pay, compensatory damages, and punitive damages after finding that Travis's employer, Exel, Inc., discriminated against her because of her sex. The discrimination occurred when Dave Harris, Travis's supervisor, denied her a promotion in favor of Michael Pooler, a male employee. After the verdict, Exel filed a renewed motion for judgment as a matter of law. The district court denied Exel's motion as to liability, but granted it as to the jury's punitive damages award. Travis and the EEOC now appeal the vacatur of the jury's punitive damages award, and Exel cross-appeals the denial of its motion as to liability. After careful review, we affirm.
I. BACKGROUND
Travis sought a promotion to a position vacated by her direct supervisor, Kenny Teal, when Harris promoted Teal to Operations Manager. When she learned of Teal's promotion, Travis told Harris that she wished to be considered for Teal's vacated position. But instead of promoting Travis, Harris selected Pooler to fill the vacated position, purportedly through the application of Exel's priority transfer practice ("PTP"), which Exel implemented as a means of transferring employees to vacant positions instead of laying them off.
By his own admission, Harris could have promoted Travis even though he was presented with a PTP candidate. Harris testified at trial that the PTP imposed no mandatory hiring and that he retained discretion in deciding whether to hire Pooler. Harris also acknowledged that he could have exercised his discretion by promoting Travis and moving Pooler into Travis's vacated position. The evidence at trial showed the feasibility of this option: several witnesses testified that Travis was well qualified for the promotion. Teal and another supervisor testified that Travis was an exceptional employee who could have easily met the job's demands. Pooler himself testified that Travis was more qualified for the job than he was. But despite Travis's expressed interest and qualifications-and Harris's discretion to promote her-Harris told her that he "was never going to" promote her to a supervisor position. Doc. 165 at 130.[1]
*1329 Harris also had a history of bias against women. Multiple witnesses testified at trial that Harris treated female employees differently than male employees. He spoke to female employees less often, acted standoffish toward them, and asked other supervisors to manage them so that he did not have to do so. But most importantly, trial testimony connected evidence of Harris's general bias against women with his specific decision not to promote Travis. Teal testified that after he was promoted he recommended Travis for his vacated position, and Harris's response was that he "would not put a woman in a management position." Doc. 166 at 16.
II. STANDARD OF REVIEW
We review a district court's ruling on a renewed motion for judgment as a matter of law de novo and apply the same standards as the district court. Abel v. Dubberly , 210 F.3d 1334, 1337 (11th Cir. 2000). Judgment as a matter of law is appropriate "only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Goldsmith v. Bagby Elevator Co., Inc. , 513 F.3d 1261, 1275 (11th Cir. 2008) (internal quotation marks omitted). "We consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." Id. (internal quotation marks omitted). "We will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence." Lambert v. Fulton Cty. , 253 F.3d 588, 594 (11th Cir. 2001).
III. DISCUSSION
A. Travis's Evidence Was Sufficient for a Reasonable Jury to Find that She Suffered Discrimination Because of Her Sex.
Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove sex discrimination under Title VII by showing that her sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." Id. § 2000e-2(m). At trial, Exel countered Travis's claim that she was denied the promotion based on her sex by offering a legitimate, nondiscriminatory reason for Harris's hiring decision: a routine application of the PTP resulted in Pooler's selection over Travis. To prove her Title VII claim, then, Travis had to show that Exel's proffered reason was pretextual "either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine , 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
We may overturn the jury's verdict only if we conclude that no reasonable jury could have found that Harris's hiring decision was motivated by discrimination based on Travis's sex rather than by application of the PTP. We cannot so conclude for two reasons. First, the jury heard evidence that Harris could have promoted Travis despite being presented with a PTP candidate. Franklin Hudson, who worked in Exel's Human Resources Department, testified that General Managers like Harris controlled their own hiring and could veto PTP candidates if they wished. Likewise, Harris admitted that he made the ultimate decision whether to hire Pooler. He also admitted that he could have exercised his hiring discretion by promoting Travis and moving Pooler into Travis's vacated position. Our dissenting colleague argues that this would have been a demotion for Pooler, but that is beside the *1330 point: the PTP did not require Harris to hire Pooler to fill Teal's vacated position. If the PTP did not require Harris to hire Pooler, then it is for the jury to decide what motivated Harris's decision. Because two different witnesses-including the decisionmaker himself-testified that the PTP imposed no mandatory hiring, the jury reasonably could have concluded that Harris had the discretion to promote Travis even though he was presented with a PTP candidate.
Indeed, the jury also heard evidence supporting the inference that Harris could have promoted Travis to Teal's vacated position without going through the PTP process at all. Both Travis and Harris testified that when Teal was promoted, Travis approached Harris seeking promotion to Teal's vacated position. Even though the evidence failed to show exactly when this conversation took place relative to when Exel's Human Resources Department first presented Pooler to Harris as a PTP candidate, the jury reasonably could have inferred that it took place beforehand. Harris testified that when Travis expressed interest in the promotion, he told her that he "was going to" post the open position, but had not done so yet. The Human Resources Department could not have referred Pooler as a PTP candidate until after the opening was posted, or at least submitted to Human Resources for posting, according to trial testimony. This evidence supports the reasonable inference that Harris knew about Travis's interest before he ever received Pooler as a PTP candidate or even learned that he would receive a PTP candidate at all. And the evidence that promotions often happened informally at Exel-for example, Harris received his own position through an informal promotion process-supported a finding that Harris could have promoted Travis when she approached him about Teal's vacated position, without going through the PTP process at all.
Second, the evidence showed that Harris harbored a bias against women. Travis testified that Harris "limited his contact with pretty much all the females in [the] office" and asked her to "manage the ladies in the office." Doc. 165 at 161. Another Exel employee, Tommy Chambers, testified that Harris was "standoffish" with female employees and treated them differently than male employees. Doc. 166 at 95. According to Chambers, Harris would come into work in the morning and "go straight to his office. He wouldn't speak to any of [the female employees]." Id. at 99. Chambers also testified, similarly to Travis, that Harris instructed him to address any issues that arose with the female employees, even if those employees normally would report to Harris directly.
The evidence the jury heard also connected Harris's bias against women with his refusal to promote Travis. Again, the evidence showed that, when she found out Harris had promoted Teal, Travis went to Harris's office and told him that she wanted Teal's vacated position.[2] Travis testified that Harris's response was dismissive: he looked her in the eye and told her that he "was never going to" promote her to a supervisor position. Doc. 165 at 130. Even though this response was not overtly discriminatory, the jury reasonably could have inferred from the other evidence of *1331 bias we have just discussed that Harris's refusal was motivated by Travis's sex. What is more, Teal testified that when he recommended Travis for his vacated position, Harris's response-which Harris repeated more than once-was that he would never put a woman in a management position.[3] Viewed in the light most favorable to Travis, Teal's testimony was evidence not only of Harris's bias against women, but also that Harris's bias motivated his refusal to promote Travis despite his discretion to do so. This evidence is sufficient to tie "generalized discriminatory behavior to the specific employment decision at issue." Dissent at ----.
In sum, the jury heard evidence that Harris could have promoted Travis to Teal's vacated position without going through the PTP process at all, and Harris had the discretion-even after he was presented with a PTP candidate-to choose Travis instead of that candidate. Perhaps most importantly, the jury also heard evidence that Harris was biased against women and acted as a result of his bias when he selected Pooler over Travis. The evidence at trial therefore was sufficient for the jury reasonably to conclude that Travis suffered discrimination because of her sex.
B. Under Our Prior Precedent, the District Court Properly Vacated the Jury's Punitive Damages Award.
The district court vacated the jury's punitive damages award after concluding that Travis had failed to present evidence sufficient to meet our standard in this circuit for imputing punitive damages to Exel. A plaintiff may recover punitive damages in a Title VII action only if the employer "engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The Supreme Court has held that this standard "focus[es] on the actor's state of mind" and "does not require a showing of egregious or outrageous discrimination independent of" that state of mind. Kolstad v. Am. Dental Ass'n , 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). But "[t]he inquiry does not end with a showing of the requisite 'malice or ... reckless indifference' " of the decisionmaker. Id. at 539, 119 S.Ct. 2118. The plaintiff must also "impute liability for punitive damages" to the employer. Id. Here, the district court vacated the jury's punitive damages award based on this imputation requirement.
Before the Supreme Court decided Kolstad , we had held that a plaintiff may impute liability for punitive damages to her employer by showing "either that the discriminating employee was high[ ] up the corporate hierarchy, or that higher management countenanced or approved [his] behavior." Dudley v. Wal-Mart Stores, Inc. , 166 F.3d 1317, 1323 (11th Cir. 1999) (alterations in original) (internal citation and quotation marks omitted). In Dudley , we applied this "higher management" standard and held that punitive damages were unavailable because the two discriminating employees were store managers at one of Wal-Mart's more than 2,000 stores.
*1332 Id. We based our holding on the fact that "Wal-Mart is a giant business" and "[n]either of [the discriminating employees were] high enough up Wal-Mart's corporate hierarchy." Id.
Shortly after we articulated the higher management standard in Dudley , the Supreme Court took up the same issue in Kolstad , 527 U.S. at 539-40, 119 S.Ct. 2118. The Supreme Court held that punitive damages are imputable when the wrongdoing employee discriminated while "acting in the scope of employment" and serving in a "managerial capacity." Id. at 543, 119 S.Ct. 2118. The Court noted that "determining whether an employee [served in a managerial capacity] requires a fact-intensive inquiry," and it instructed courts to evaluate the employee's "type of authority" and "amount of discretion" in making that determination. Id. (internal quotation marks omitted). The Court's instruction, which focuses the inquiry on the discriminating employee's authority and responsibilities, appears to conflict with our higher management standard, which looks to the size of the employer and the discriminating employee's rank in the corporate hierarchy. Indeed, the Supreme Court said that "an employee must be important, but perhaps need not be the employer's top management, officers, or directors." Id. (internal quotation marks omitted).
We have never squarely addressed the apparent conflict between Kolstad and Dudley , but Travis asks us to do so in this case. As a panel, however, we remain bound by our prior panel precedent. Even though the Supreme Court decided Kolstad after Dudley , this court has continued to apply the higher management standard while acknowledging Kolstad . See Miller v. Kenworth of Dothan, Inc. , 277 F.3d 1269, 1280 (11th Cir. 2002) (citing Kolstad , but nonetheless reiterating Dudley 's higher management standard); see also Ash v. Tyson Foods, Inc. , 664 F.3d 883, 902 n.12 ("Our later decision in Miller recognizes that Kolstad did not affect [the higher management standard articulated in] Dudley ; Miller reiterates and applies Dudley's high-in-the-hierarchy rule."). We are bound, therefore, to apply the higher management standard in this case. See United States v. Archer , 531 F.3d 1347, 1352 (11th Cir. 2008) ("Under [the prior panel precedent] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc .").
Applying that standard, we affirm the district court's conclusion that Travis failed to present evidence sufficient to impute punitive damages to Exel. First, Travis failed to show that Harris was "high[ ] up the corporate hierarchy." Dudley , 166 F.3d at 1323 (alteration in original). In 2008, Harris was but one of 329 General Managers, and he oversaw only 25 employees, which amounted to 0.1% of Exel's employees in North America. Based on the high number of other employees with his same title and the low number of employees under his supervision, Harris was not sufficiently high up Exel's corporate hierarchy to impute, under Dudley , punitive damages to Exel. See Ash , 664 F.3d at 903 (punitive damages unavailable even when the discriminating manager oversaw 1,400 employees, which amounted to 1.5% of the employer's total employees). Second, Travis also failed to show that "higher management countenanced or approved [Harris's] behavior." Dudley , 166 F.3d at 1323 (internal quotation marks omitted). Even if other Exel employees were involved in Pooler's PTP transfer, there was simply no evidence that any employee above Harris's rank was aware even that Travis had requested the promotion.
In sum, we are bound by our prior panel precedent to apply the higher management *1333 standard and therefore affirm the district court's vacatur of the jury's punitive damages award.
IV. CONCLUSION
For the foregoing reasons, we affirm the district court's order denying Exel's renewed motion for judgment as a matter of law as to liability and granting the motion as to the jury's punitive damages award.
AFFIRMED.

All citations in the form "Doc. #" refer to the district court docket entries.

This testimony suffices to defeat Exel's argument that Travis cannot recover because she failed to apply for Teal's vacated position. Even if Travis failed to submit a formal application, the evidence showed that other Exel employees had received promotions through informal requests similar to Travis's. Indeed, Exel's counsel appears to have conceded that Travis applied for the position when he said, during closing argument, "[n]obody is saying, well, we're defending the case because she didn't apply. Nobody is saying that. I'm not saying that." Doc. 167 at 208.

We recognize that Teal testified inconsistently regarding the timing of Harris's comment, but it was up to the jury, not to us, to consider the credibility of Teal's testimony in light of this inconsistency. See Lipphardt v. Durango Steakhouse of Brandon, Inc. , 267 F.3d 1183, 1186 (11th Cir. 2001) ("[I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." (internal quotation marks omitted) ). Because we must view the evidence in the light most favorable to Travis, we must accept as true Teal's testimony that Harris made the comment in June 2008 when Teal recommended that Harris promote Travis to Teal's vacated position.