[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11181
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-60844-DPG

GEORGINA CID,

Plaintiff-Appellee,

versus

CITY OF MIRAMAR, FLORIDA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 27, 2020)

Before ED CARNES, Chief Judge, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Georgina Cid sued her employer, the City of Miramar, for national origin discrimination and retaliation under state and federal law. She won. The jury awarded her $300,000. After the verdict, the City renewed its motion for judgment as a matter of law, the district court denied that motion, and the City appealed.

I.

Cid, who was born in Cuba, was hired by the City through a temp agency in 2014.[1] She reported directly to Kathleen Woods-Richardson, the city manager, as an administrative assistant. After a month, in November 2014, Woods-Richardson hired her as a full-time, permanent executive administrator. Woods-Richardson testified at trial that Cid was "always agreeable" and "pleasant to work with," but the work became too much, and Cid's performance suffered. Woods-Richardson never addressed those alleged performance issues with her. Cid denied that she had performance problems.

About four months after Cid was hired as a full-time employee, in March 2015, the City held an election, the mayor and some commissioners were replaced, and the commission became majority Jamaican. One month later Woods-Richardson demoted Cid. She said Cid was being demoted because "the commission had changed" and she needed someone who could "communicate

---

[1] When reviewing the district court's denial of a renewed motion for judgment as a matter of law, we consider all evidence in the light most favorable to the nonmoving party. EEOC v. Exel, Inc., 884 F.3d 1326, 1329 (11th Cir. 2018). That's Cid in this case.

2

better" with the new commissioners and mayor. Cid took that to mean that the commissioners and mayor spoke a language that she did not.[2] Cid was reassigned to work for Vernon Hargray, assistant city manager, and Michael Moore, the chief operating officer, and her pay was reduced by $5,000 a year. She was replaced by Julie Richards, who was Cuban and Jamaican. Richards, unlike Cid, did not have a college degree.

A month after her demotion, in May 2015, Cid complained to Sam Hines, the City's director of human resources. She told him that she was being discriminated against because of her national origin. She said that she was demoted because she was Cuban-American and that her new managers were treating her differently than they treated other employees. Hines told Cid to try speaking with Moore and Hargray to make sure that she understood their expectations.

Cid tried to do that. She sent Moore and Hargray calendar invites to discuss "expectations." She also called Moore and told him that she had spoken with human resources, but she did not mention to either of them that she had complained about national origin discrimination. They both declined her invite.

---

[2] In fact, Cid originally claimed that the new commissioners and mayor were Haitian, and that Woods-Richardson wanted someone who spoke Creole. But the new commissioners were not Haitian and did not speak Creole.

After complaining to HR, Cid's relationship with Moore deteriorated. He was hostile and rude to her. He allegedly felt that her performance was subpar but never documented it.

In September, Cid attended a grant-writing seminar with Moore's permission. She marked herself as out of the office all day on the office calendar. The seminar ended at 4pm. Cid asked the other City employees in attendance whether they were returning to work or going home after the meeting. The other employees said they were going home, so after speaking with the presenter Cid went home too.

Moore was frustrated that Cid did not come back to the office after the seminar; he had another employee check to see when it ended. The next day he asked Cid why she didn't return to work. According to Moore, she claimed that she spoke with the presenter for forty-five minutes and then went home because it was so late. Cid denies that and asserts that what she told Moore was that she had spoken to the presenter for only five minutes. Whatever Cid told Moore during that conversation, both of them raised their voices.

Moore checked the security camera footage from the training room and saw that Cid had not spoken to the presenter for forty-five minutes. He called Hines to his office and they discussed what to do. After speaking with Hines and the legal

4

department, Moore decided to fire her for dishonesty and insubordination.  Hines "reviewed and approved" the decision.

Cid sued, the case went to trial, and the jury found the City liable for national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), and the Florida Civil Rights Act, Fla. Stat. § 760.10.  After the verdict, the City renewed its motion for judgment as a matter of law.[3]  The court denied that motion, and the City appeals.

The City contends that there was no legally sufficient evidentiary basis for a reasonable jury to find in Cid's favor on either of her claims.  Cid, in turn, contends that we do not have jurisdiction to review the district court's denial of the City's renewed motion for judgment as a matter of law.  We first address our jurisdiction then turn to the merits.

## II.

Cid contends that we lack jurisdiction to review the district court's denial of the City's renewed motion for judgment as a matter of law because it was a post-judgment decision that was not included in the City's notice of appeal.  The City's notice of appeal in its entirety states:

> Notice is hereby given that Defendant, City of Miramar, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Final Judgment of the United States District Court for the Southern District of Florida entered in this action on July 11, 2018, entering

---

[3] It also moved for a new trial but did not appeal the court's denial of that motion.

5

>     judgment in favor of Plaintiff, Georgina Cid, and against Defendant, as
>     well as from all other adverse prior orders and judgments encompassed
>     therein. See ECF No. 139. Defendant's Renewed Motion for Judgment
>     as a Matter of Law or Alternative Motion for New Trial was denied on
>     March 2, 2019. See ECF No. 168.

Doc. 172.  Cid argues that the notice of appeal does not encompass the denial of the City's renewed judgment of a matter of law (even though it expressly mentions that denial) because the notice refers to adverse "prior" orders.  The denial of the renewed judgment of a matter of law, Cid asserts, cannot be a "prior" order because it was entered after the final judgment, not before it.

A notice of appeal "must . . . designate the judgment, order, or part thereof being appealed."  Fed. R. App. P. 3(c)(1)(B).  As a general rule, we do not have jurisdiction to review a judgment or order that is not specified in the notice of appeal.  Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1528 (11th Cir. 1987).  But "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice."  Fed. R. App. P. 3(c)(4).  We usually construe a notice of appeal liberally, and we may construe it to include an order that is not specified in the notice if "the overriding intent to appeal [that order] is readily apparent on the face of the notice.  Osterneck, 825 F.2d at 1528.

Immediately after stating that the City was appealing the final judgment and "all other adverse prior orders and judgments," its notice of appeal states that the

6

City's renewed motion for judgment as a matter of law was denied.  It is obvious from the face of the notice that the City intended to appeal that denial.  And we have jurisdiction to review it.

### III.

We review <u>de novo</u> the district court's denial of a motion for judgment as a matter of law.  <u>EEOC v. Exel, Inc.</u>, 884 F.3d 1326, 1329 (11th Cir. 2018).  "Judgment as a matter of law is appropriate 'only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict.'"  <u>Id.</u> (quoting <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1275 (11th Cir. 2008)).  We review the entire record, considering the evidence and making all reasonable inferences in the light most favorable to the nonmoving party.  <u>Id.</u>  But "[w]e will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence."  <u>Id.</u> (citing <u>Lambert v. Fulton Cty.</u>, 253 F.3d 588, 594 (11th Cir. 2001)).

### A.

Both Title VII and the Florida state law prohibit employers from discriminating against an employee on the basis of national origin.  42 U.S.C. § 2000e–2(a)(1); Fla. Stat. § 760.10(1)(a).  Claims under the Florida law are analyzed under the same framework as claims brought under Title VII.  <u>Jones v. United Space Alliance, L.L.C.</u>, 494 F.3d 1306, 1310 (11th Cir. 2007).

A plaintiff can prove discrimination under Title VII by showing that her national origin "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m) (emphasis added). She can prove an intentional discrimination claim using direct or circumstantial evidence. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010). The City contends that the jury lacked a legally sufficient evidentiary basis to find that the City demoted Cid because of her national origin in violation of Title VII and Florida state law.

At trial, Cid established the following. She was hired as a permanent employee because she did such a good job as a temp. Her manager described her as always agreeable and easy to work with. She received no write-ups or other discipline. The City held an election and as a result the commission became majority Jamaican. Cid, who is not Jamaican, was demoted only one month later. She was told that the demotion was because of the change in the commission, that the City needed someone who was a better fit and who could communicate better with the commissioners. She was replaced by someone who was Jamaican and Cuban, and who was born and raised in Jamaica. Her replacement did not have a college degree; Cid did.

8

City employees testified at trial that Cid was demoted because of her (undocumented) poor performance.  But the jury observed those witnesses and was free to disregard or discount their testimony, as it apparently did.

Taking all of the evidence together, the jury could have found that Cid was a high performing employee who was demoted, without warning, a month after a majority-Jamaican commission was elected.  The City wanted to find someone who could "communicate" better with the commission, so they hired someone who was less objectively qualified, but who was the same ethnicity as the new commissioners. That is sufficient evidence for a reasonable factfinder to infer that Cid's national origin was a motivating factor in her demotion.

The City argues that the court should still have granted its renewed motion for judgment as a matter of law because the jury instructions required more of Cid than Title VII requires, and jury instructions trump the governing law.  The jury instruction — which was suggested by the City, agreed to by Cid, and adopted by the court — states that Cid had to show that national origin was the motivating factor in her termination, instead of a motivating factor as required under Title VII. The jury instruction also states that Cid was claiming that she was discriminated against based on being Cuban American and that she was not claiming that she was demoted for being "not Jamaican."  The City asserts that the evidence at trial was enough to prove only that Cid was demoted for being "not Jamaican," not that she

9

was demoted because she was Cuban American. It also asserts that because Cid did not object to the jury instruction in the district court and does not object to it now, we must rely on the instruction on appeal, not on the law.

That is not what Rule 50 says. It allows a court to grant a motion for judgment as a matter of law if, under "controlling law," the reasonable jury could not have found for the plaintiff. We have not defined "controlling law" in that context, but the Fifth Circuit has. It held that, when reviewing the denial of a motion for judgment as a matter of law, a court is "not restricted to the law as stated in the jury instructions." Arsement v. Spinnaker Exploration Co., 400 F.3d 238, 249 (5th Cir. 2005). Instead, the question is whether a reasonable jury could have found the existence of the elements required for liability under the applicable statute. Id. If a reasonable jury could have found the City liable under the jury instruction, it could have found the City liable under Title VII.

### B.

The City also contends that there was insufficient evidence for a reasonable jury to find that Cid was fired in retaliation for complaining to human resources about being demoted based on her national origin. Both Title VII and Florida state law prohibit employers from retaliating against an employee because that individual "opposed" an unlawful employment practice. 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7).

To establish a claim of retaliation, an employee must prove that she engaged in protected conduct, she suffered an adverse employment action, and her participation in the protected activity was the but-for cause of the adverse action. Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1193–94 (11th Cir. 2016). To show but-for causation, the plaintiff must establish that the employer was "actually aware" of her participation in protected activity. Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1353 (11th Cir. 1999).

Here, Cid engaged in protected activity by complaining to human resources about national origin discrimination. She suffered an adverse action: she was fired. The only question remaining is whether her complaint was the but-for cause of her termination.

The City contends that Moore — Cid's manager — was the decisionmaker, and that there are insufficient facts for a jury to find that he knew about Cid's protected conduct, so she did not prove but-for causation. The City relies on our decision in Clover, 176 F.3d at 1354, arguing that it addressed similar facts. In that case, the decisionmaker knew that human resources was conducting an investigation. Id. He met with the human resources investigator sometime after the plaintiff had met with the investigator. Id. We held that was not enough evidence for a factfinder to infer that the decisionmaker knew the plaintiff had engaged in protected conduct by participating in the investigation. Id. at 1355. We

11

refused to speculate, in the absence of any evidence, that the human resources investigator had told the decisionmaker about the plaintiff's protected activity. Id. at 1355–56.

So too here. There is no evidence that Moore knew that Cid complained to human resources about national origin discrimination. Cid told Moore that she spoke to human resources, but she did not say that it was about national origin discrimination; nor did she tell Moore that she had engaged in any other protected activity. And even though Moore spoke with Hines before Cid's termination, both Moore and Hines testified that Hines did not inform Moore that Cid had complained about national origin discrimination. There are not enough facts for a reasonable factfinder to conclude that Moore knew about Cid's protected activity.

But that is not the end of our inquiry. Cid contends that she still established that she was retaliated against because Hines was also a decisionmaker. In Clover we held that the human resources investigator was not a decisionmaker because he had the power only to "review and evaluate" a termination decision, not the "authority to overrule" it. Id. at 1356. We also noted that the human resources investigator "made no recommendation" to the decisionmaker about whether to terminate the plaintiff. Id.

At trial, Moore testified that he, as Cid's manager, made the decision to fire her. But Moore also testified that all terminations had to be approved by human

12

resources. And Hines testified that he, as the human resources director, reviewed and approved Cid's termination. He said that it was his job "to make sure that all terminations are rightful terminations, that they are not done for any other reason." He testified that he "review[ed] all of the circumstances" and agreed to terminate Cid.

These facts, taken together, are enough for a reasonable jury to determine that Hines was a decisionmaker.[4] Both Moore and Hines said that human resources had to approve the termination, which permits the reasonable inference that Hines exercised authority over the termination decision, which he testified that he approved.

IV.

The jury found that the City demoted Cid based on her national origin and then fired her in retaliation for complaining about the discriminatory demotion. Because sufficient evidence supports those findings, we will not second-guess the jury or substitute our own judgment for its verdict. See EEOC, 884 F.3d at 1329.

**AFFIRMED.**

---

[4] The City also argues that the jury could not have found that Hines was a decisionmaker because the court instructed it that Moore was the decisionmaker. The record does not support that argument. When instructing the jury, the court stated: "The City denies Ms. Cid's retaliation claim and asserts that its decisionmaker (J. Michael Moore) had no knowledge of her alleged complaint." The instruction did not require the jury to find that Moore was the decisionmaker; it stated the City's position that he was.

13