[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12037

Non-Argument Calendar

_____

ASHLEY MERARD,

Plaintiff-Appellee,

*versus*

MAGIC BURGERS, LLC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-01864-PGB-LRH

_____

Before JORDAN, LAGOA, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this employment action, Plaintiff Ashley Merard asserted claims against her former employer, Magic Burgers, LLC ("Magic Burgers"), for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and in violation of the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10. Magic Burgers appeals the district court's denial of its motions for judgment as a matter of law on the issue of punitive damages.[1] No reversible error has been shown; we affirm.[2]

---

[1] Magic Burgers raises no challenge to the jury's finding that Magic Burgers fired Plaintiff because of Plaintiff's disability, to the jury's award of compensatory damages, or to the amount of punitive damages awarded.

[2] On appeal, Magic Burgers also seeks to challenge the district court's denial of Magic Burgers's peremptory strike on Juror 4. Magic Burgers's lawyer made no contemporaneous objection to the district court's ruling during *voir dire* and, instead, said affirmatively that Magic Burgers "accept[ed] the panel." Because Magic Burgers never raised the peremptory-strike issue in the district court, we will not consider this issue for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."); *see also Webb-Edwards v. Orange Cty. Sheriff's Off.*, 525 F.3d 1013, 1030 (11th Cir. 2008) ("[A] litigant who deems himself aggrieved by what he considers to be an improper occurrence in the course of trial or an erroneous ruling by the trial judge ordinarily must object then and there, or forfeit any right to complain at a later time.").

## I.

In 2016, Plaintiff was injured in a car accident. As a result of her injuries, Plaintiff was fitted with a tracheostomy tube: a tube that was visible on the front of her neck.

In July 2017, Plaintiff was hired as a "crew member" by Magic Burgers and was assigned to work as a cashier in the restaurant's drive-thru and in the front of the restaurant. When Plaintiff reported to work on 23 August 2017, Plaintiff's supervisor (Sonia Rivera) told Plaintiff that Plaintiff's employment was being terminated. When Plaintiff asked for a reason, Rivera said, "because of that" and pointed to Plaintiff's tracheostomy tube. Rivera apologized, told Plaintiff that the decision to fire Plaintiff was not made by Rivera, and said that "people over [Rivera] wanted . . . to fire [Plaintiff]."

At trial, Rivera testified that she did not want to fire Plaintiff but was ordered to do so. Rivera said her supervisor (Ana Arauz) told Rivera that the Regional District Manager (Jim Burris) mandated that Plaintiff be fired. Rivera refused initially to fire Plaintiff after which Burris threatened to fire both Rivera and Arauz unless they complied.

A couple of days after Plaintiff's employment was terminated, Burris visited the restaurant to confirm that Plaintiff had been fired. During that visit, Burris -- speaking to Rivera -- referred to Plaintiff as "the nasty girl with . . . the tube in the throat."

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After the EEOC issued Plaintiff a right-to-sue letter, Plaintiff filed this civil action. In pertinent part, Plaintiff asserted claims for disability discrimination under the ADA and under FCRA.[3] Plaintiff's disability-discrimination claims proceeded to a jury trial.

At the close of Plaintiff's case-in-chief, Magic Burgers moved -- pursuant to Fed. R. Civ. P. 50(a) -- for judgment as a matter of law on the issue of punitive damages. Magic Burgers argued that Plaintiff failed to present evidence demonstrating malice or reckless indifference to Plaintiff's federally-protected rights, a pattern of discrimination, or actual knowledge of a violation of federal law. Magic Burgers also argued that the managers involved (Rivera, Arauz, and Burris) were too low on the corporate hierarchy for their conduct to be imputed to the company. In the alternative, Magic Burgers asserted a good-faith defense based on the company's anti-discrimination policy.

The district court denied Magic Burgers's Rule 50(a) motion. The district court noted that Burris -- a regional district manager-- was "fairly high up in the hierarchy" and that Burris's "nasty girl with the tube in her neck" comment raised a genuine issue of

---

[3] Plaintiff also asserted claims for failure to accommodate and for retaliation under the ADA and under FCRA. The district court granted summary judgment in favor of Magic Burgers on those claims; those claims are not before us on appeal.

material fact about whether the company exhibited malice or a serious disregard for Plaintiff's rights.  About a potential good-faith defense, the district court pointed to testimony that neither the company's anti-discrimination policy nor a hotline for reporting discriminatory conduct were posted in employee break areas and that Burris's comment evidenced a serious disregard for those policies.  At the close of the defense case, Magic Burgers renewed its Rule 50(a) motion.  The district court denied the motion without further explanation.

The jury returned a verdict in favor of Plaintiff, finding that Magic Burgers discharged Plaintiff because of Plaintiff's disability. The jury awarded Plaintiff over $15,000 in compensatory damages for lost wages, $30,000 in compensatory damages for emotional pain and suffering, and $2 million in punitive damages.  The district court reduced the punitive-damages award to $300,000 based on the ADA's statutory cap on damages.  The district court entered final judgment in favor of Plaintiff against Magic Burgers and awarded Plaintiff $345,519.60.

## II.

On appeal, Magic Burger challenges the district court's denial of its Rule 50(a) motions for judgment as a matter of law on the issue of punitive damages.[4]

---

[4] After final judgment was entered on 12 May 2021, Magic Burgers moved -- under Fed. R. Civ. P. 50(b) -- for judgment as a matter of law on punitive damages.  The district court denied this post-judgment motion on 23 June 2021.

"We review *de novo* a district court's ruling on a motion for judgment as a matter of law, considering the evidence and the reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 591 (11th Cir. 2019). "Judgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Id.* (quotations omitted).

Punitive damages are available in a federal employment-discrimination case when "the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529-30 (1999) (citing 42 U.S.C. § 1981a(b)(1)). Under this standard, an employer must have discriminated "in the face of a perceived risk that its actions w[ould] violate federal law." *Id.* at 536. "Malice means an intent to harm and recklessness means serious disregard for the

---

Magic Burgers's notice of appeal (filed while its Rule 50(b) motion was still pending) did not designate the district court's later-issued 23 June ruling as subject to appeal. Nor did Magic Burgers amend its original notice of appeal to include the district court's 23 June ruling as subject to appeal. The district court's 23 June ruling on Magic Burger's Rule 50(b) motion is thus not before us on appeal. *See Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1271-72 (11th Cir. 2013) (concluding that the Court lacked jurisdiction to decide issues not designated properly in the appellant's notice of appeal; and explaining that a party seeking review of the denial of a Rule 50(b) motion "is required [by Fed. R. App. P. 4(a)(4)(B)(ii)] to file a separate notice of appeal or amend its original notice to designate the motion as subject to appeal").

consequences of one's actions." *United States EEOC v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (quotations and brackets omitted). "A jury may find reckless indifference where the employer does not admit that it knew that its actions were wrong." *Id.*

In addition to showing malice or reckless indifference, a plaintiff seeking punitive damages must also impute liability to the employer. *Kolstad*, 527 U.S. at 539, 542-43. To impute liability, the plaintiff must show that "the discriminating employee was high up the corporate hierarchy" or that "higher management countenanced or approved his behavior." *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 900-01 (11th Cir. 2011); *see also EEOC v. Exel, Inc.*, 884 F.3d 1326, 1332-33 (11th Cir. 2018) (concluding that this Court is bound post-*Kolstad* to apply the "high-in-the-hierarchy" standard announced in *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317 (11th Cir. 1999)).

The evidence presented at trial was sufficient for the jury to infer reasonably that Burris acted with malice or with reckless indifference to Plaintiff's federal rights under the ADA. The trial testimony demonstrated that Burris wanted Plaintiff fired because of Plaintiff's tracheostomy tube. Burris then threatened to fire both Rivera and Arauz if Rivera refused to terminate Plaintiff's employment. Burris later visited the restaurant to ensure that "the nasty girl with . . . the tube in the throat" had indeed been fired. Based on this evidence, the jury was entitled to find that Burris made the decision to terminate Plaintiff's employment and that Burris acted

with blatant disregard for Plaintiff's federally-protected rights and for the legal consequences of his acts.

On appeal, Magic Burgers does not dispute that Burris was high up enough in the corporate hierarchy for his decisions to be imputed to Magic Burgers.[5]  Instead, Magic Burgers says that -- even if Burris's discriminatory conduct can be imputed to the company -- Magic Burgers is entitled to a good-faith defense.

Under a good-faith defense, an employer may avoid vicarious liability for punitive damages where the discriminatory "employment decisions of managerial agents . . . are contrary to the employer's good-faith efforts to comply with" federal employment law. *See Kolstad*, 527 U.S. at 545-46.  Some examples of good-faith efforts include "a written company policy forbidding . . . unlawful types of discrimination, communication of that policy to all decision makers and other employees, and training on the policy." *See Ash*, 644 F.3d at 904.  Despite having a written anti-discrimination policy, an employer may be unentitled to a good-faith defense if the evidence demonstrates that the policy is "ineffective." *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1281-82 (11th Cir. 2008).

---

[5] Magic Burgers argues only that Rivera was insufficiently high in the corporate hierarchy to subject Magic Burgers to liability for punitive damages.  This focus on Rivera is misplaced.  The evidence presented at trial (viewed in the light most favorable to Plaintiff) demonstrates that it was Burris -- not Rivera -- who made the decision to terminate Plaintiff's employment.

Magic Burgers argues that it is entitled to a good-faith defense because it had established a written anti-discrimination policy. Under that policy, employees were required (among other things) to report suspected discriminatory conduct either by notifying their supervisor (or someone in their chain of command) or by using the company hotline. The policy provided that both the reporting requirement and the number for the company hotline were to be posted on a bulletin board in employee break areas.

Notwithstanding Magic Burgers's policy, Rivera -- a general manager who had worked at five different Magic Burger locations -- testified that she was unaware of the company hotline. Rivera testified that none of the Magic Burger restaurants in which she had worked had posted on the bulletin board either the reporting requirement or the company hotline. Although Rivera refused initially to fire Plaintiff, she did not report the discriminatory conduct to her supervisor or to someone in her chain of command because both Arauz and Burris already knew about and were involved directly in the circumstances surrounding Plaintiff's firing. Nor did Rivera report the discriminatory conduct to anyone else: she feared being fired for insubordination.

This evidence supports a finding that -- although Magic Burgers had implemented an anti-discrimination policy -- Magic Burgers had failed to communicate and to train effectively its managers and employees on that policy. Based on this evidence, the jury could conclude reasonably that Magic Burgers's anti-discrimination policy was "ineffective" and, thus, that Magic Burgers was

unentitled to a good-faith defense.  *See Goldsmith*, 513 F.3d at 1281-82 (concluding that the evidence supported the jury's finding that a company's anti-discrimination policy was "ineffective" when the company's supervisors failed to follow or to enforce the policy and when no training was provided on the policy).

The evidence presented at trial was not so "overwhelmingly in favor" of Magic Burgers that a reasonable jury must have arrived at a contrary verdict to the one actually reached.  We affirm the district court's denial of Magic Burgers's Rule 50(a) motions on the issue of punitive damages.

AFFIRMED.