[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12834

Non-Argument Calendar

_____

FIRST BAPTIST CHURCH OF LILLIAN,

Plaintiff-Appellee,

*versus*

CHURCH MUTUAL INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cv-00477-KD-MU

_____

Before LAGOA, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

This appeal requires us to decide whether, among other things, there was sufficient evidence for a jury to find that First Baptist Church of Lillian ("First Baptist") sustained a loss that was covered under its insurance policy with Church Mutual Insurance Company ("Church Mutual"). First Baptist sued Church Mutual for breach-of-contract after Church Mutual asserted that certain damages to First Baptist's property were excluded from coverage under the policy. Following a trial, a jury returned a verdict in First Baptist's favor and awarded it $169,598.78 in damages. Church Mutual then filed a motion for judgment as a matter of law or, in the alternative, a new trial, which the district court denied. After careful consideration of the parties' arguments, we conclude that the evidence supporting the jury's verdict was sufficient, and we thus affirm the district court's denial of the motion for judgment as a matter of law or a new trial.

## I.    FACTUAL & PROCEDURAL BACKGROUND

This case arises from the aftermath of Hurricane Sally in 2020. Prior to that, Church Mutual issued an insurance policy to First Baptist that covered two buildings at issue here, namely, the Church and Educational Building (the "Sanctuary") and the Family Life Center (the "Gym").

The insurance policy is an all-risk policy, meaning that Church Mutual agreed to pay for any direct physical loss of or damage to covered property unless an exclusion or limitation applied. There is no dispute that the Sanctuary and Gym were covered property and that the relevant damages were sustained during the policy period. However, while First Baptist asserts that the damage to the buildings was caused by Hurricane Sally, a covered cause of loss, Church Mutual counters that the claimed damaged resulted from wear and tear stemming from earlier incidents, an excluded cause of loss.

Of particular relevance, during a 2018 wind event, a limb snapped and fell onto the metal roof of the Gym building, resulting in minor, localized damage and "some water intrusion." First Baptist filed a claim with Church Mutual seeking coverage for those damages. Church Mutual sent an adjuster who in turn recommended an engineer to inspect the roof damage. Following this inspection, Church Mutual conceded that there was covered damage, but the loss did not exceed the deductible, and thus no payment was issued. First Baptist retained Eric Naquin, a roofer and the owner of Naquin Enterprises, to repair damage to the roof.

Two years later, in September 2020, Hurricane Sally made landfall in Gulf Shores, Alabama. Subsequently, First Baptist made a claim under its policy with Church Mutual for roof damage, interior water damage caused by leaks, waterlogged windowpanes, and related damage that it alleged was caused by Hurricane Sally on September 16, 2020.

Church Mutual, based on the report of its engineering expert and the estimate of its adjuster, made an initial claim payment which was solely for damage to a separate, uninsured building. As a result of this error, there was confusion among both parties. First Baptist proceeded to hire its own independent adjuster, Resolved Group, who produced an estimate that included the Sanctuary, the Gym, and the uninsured building. That initial Resolved Group estimate totaled about $856,000, of which over $300,000 was for damage to the uninsured building. The confusion as to which buildings were insured was ultimately clarified at a reinspection with all parties, where Church Mutual found covered damages to the Sanctuary roof and interior in the amount of $112,238.29 as well as covered damages to the interior of the Gym building in the amount of $12,377.24. In accordance with their findings at the reinspection, Church Mutual issued a supplemental payment for the covered damage, which was calculated by factoring in depreciation, applying the deductible, and adjusting for the prior payment made towards the uninsured building. At this point, the total of all payments made to First Baptist on the Hurricane Sally claim was $54,713.93.

First Baptist then sued Church Mutual on October 5, 2021, asserting claims for breach of contract and bad faith. On December 9, 2022, the district court dismissed the bad-faith claim on summary judgment. The breach of contract claim proceeded to a jury trial.

At trial, First Baptist offered testimony from Pastor Joshua Thompson as to the condition of the Sanctuary and Gym before

and after Hurricane Sally.  The day after the storm, Pastor Thompson visited First Baptist to assess the damage.  The damage he personally observed in the Sanctuary building included "water in some areas on the floor," "some stains on the ceiling," as well as "some chairs that had staining on them in the sanctuary from the roof leak."  In the Gym building, he noted: "Water on the floor. Puddles of water in the main area of the gymnasium. Water on the carpet. Water in some of the classrooms on the floor."  Additionally, he observed damage to the ceiling tiles in the Gym building.  Pastor Thompson testified that none of the damage he identified was present before Hurricane Sally.

Both First Baptist and Church Mutual offered engineering experts who provided competing testimony about the cause of the damage.

First Baptist retained Michael Biller, P.E., a structural engineer, to explain his assessment of the cause of damage.  Biller outlined his methodology by describing his step-by-step process for evaluating the damage to First Baptist's property.  Biller began his investigation by reviewing the opposing engineer's report, along with photographs that were provided by First Baptist.  Next, he compiled available weather data from the National Hurricane Center and reviewed it.  Additionally, Biller reviewed meteorological data from the National Oceanic and Atmospheric Administration.  Biller noted that his investigation also involved obtaining historic information about the buildings from Pastor Thompson.  Biller's investigation included a multi-day site inspection of the Gym and

the Sanctuary by two Engineering Interns working under Biller's direct supervision.  Biller explained that the site assessment consisted of viewing the exterior of the buildings, viewing the interior of each accessible room within the buildings, and observing roof surfaces, accessible attic spaces, spaces above ceiling tiles, areas between ceiling tiles, and the underside of the roof structure.  Biller described the Engineering Interns' qualifications for the jury, stating, "They've both trained extensively with me," and that they were "degreed professionals."  He added that "[t]hey have an [Engineering Intern] designation because they took the first eight-hour exam and passed it and also graduated from an accredited university to enable them to get the engineering designation."

Biller discussed his observations of the interior and exterior damages on the Sanctuary building in detail, sharing his conclusions for each observation.  He opined that the stained decking condition in the attic of the Sanctuary along with the conditions of the ceiling finishes that he observed "indicates a widespread failure of the roof system."  He explained his conclusion that "the wind forces experienced during Hurricane Sally caused breaches in the roof system, throughout the roof system, of the sanctuary building," due to "the continued deflection of the roof structure during the storm."  Biller connected his observations in the Sanctuary, such as the separations and cracking in the ceilings and walls, to Hurricane Sally, concluding that the conditions found are due to deflection associated with the roof structure.  He opined that water entered the Sanctuary during Hurricane Sally through storm created openings.

After discussing the Sanctuary, Biller detailed his observations of the Gym. He described moisture staining on the ceiling tiles throughout the Gym, listing each room he observed this condition in. Biller explained his conclusion regarding the Gym, opining that there was "a widespread roof system failure. It's not a structural failure. It's a waterproofing failure." Biller testified that Hurricane Sally caused the Gym to deflect, which created openings around the fasteners and the panel laps that were not there before Hurricane Sally, allowing water to enter the building. He also opined that the condition of fogging or condensation of the Gym windows was caused by "the same mechanism that caused the window failure in the sanctuary," that being, "repeated deflection of the window system and the eventual failure of the seals that would ordinarily keep water from entering between the glass panes." As far the exterior of the Gym, Biller stated that he observed conditions that were consistent with hurricane-force winds, describing "displaced metal closure panels at the top sides of the exterior walls," "a displaced gutter downspout," and "metal fascia displacement."

Church Mutual retained Kurt Mulder, P.E., also a structural engineer, to provide an opposing causation opinion about the damages at First Baptist. Mulder explained that water had been intruding in the Sanctuary for a long time, because shingle fasteners had been installed improperly (leading to worn shingle areas and water intrusion), because the shingle corners had not been properly sealed when installed, and because the caulking previously applied to the roof to stop leaks had deteriorated and cracked. He noted

that the Sanctuary roof decking was warped, indicating uneven drying following water intrusion, as well as "a lot of rot, deterioration kind of going on below the steeple area." Mulder opined that water damage seen in the interior of the Gym building was caused by overdriven fasteners, underdriven fasteners, corroded fasteners, and missing fasteners. He noted that the foam closures between the metal roof panels atop the Gym were cracked and deteriorated, allowing moisture intrusion. He also noted that the repairs done to the fasteners as well as the sealant used in an attempt to repair or maintain the metal roof over the years were improperly done and were deteriorating. Again, Mulder noted signs that water intrusion had been occurring for a long time, such as multiple rings of water stains on the ceiling tiles and long-term corrosion of the metal beams where there was improper or torn insulation. He did not observe any uplift in the metal roof panels or bowing along the edges, as he would expect with damage caused by hurricane winds.

As to damages, First Baptist retained Jason Nezat, an independent adjuster, to prepare a damage estimate and offer expert testimony at trial regarding the replacement cost value and the actual cash value of the damage to First Baptist. Nezat inspected the two buildings at First Baptist and provided a written estimate of the damages utilizing the industry standard software Xactimate. Nezat testified as to the process of preparing an Xactimate damage estimate and what each column in the estimate represents. In preparing for his inspection of the First Baptist property, Nezat reviewed the engineering report that Biller wrote as well as a damage estimate from BluSky Restoration that Church Mutual provided. As

part of his inspection, he took measurements of all the rooms with Xactimate Mobile software and photographed all Hurricane Sally damage that he identified. After reviewing his methodology, Nezat walked through his entire estimate for the jury, describing the damage and then providing his expert opinion about what repairs would be necessary.

Jury instructions were addressed four times during trial. First, an initial charge conference was conducted regarding all proposed jury instructions. During this initial charge conference, the district court denied Church Mutual's request for a jury instruction on the requirement of expert testimony and held over Church Mutual's requested jury instruction regarding the burden of proof for a policy exclusion. After reviewing the pertinent case law, the district court conducted a second discussion regarding the charge for the burden of proof for a policy exclusion in which it explained its reasoning for altering Church Mutual's requested charge. At the close of all evidence, the district court presented the parties with the final jury instructions, which included the altered burden of proof language for a policy exclusion. When asked if there were any objections to the final jury instructions, Church Mutual's counsel replied, "No, Your Honor." After reading the instructions to the jury, the district court again asked if there are any exceptions to the jury instructions and Church Mutual's counsel replied, "Not from the defense."

During the trial, Church Mutual moved for judgment as a matter of law at the end of First Baptist's case and at the end of all

evidence, but the court denied those motions.  The jury found that Church Mutual breached the insurance contract and awarded First Baptist $169,598.78 in damages.  The district court entered judgment upon the jury's verdict on April 19, 2023.  The district court also taxed costs against Church Mutual in the amount of $7,998.74.

Subsequently, Church Mutual filed a renewed motion for judgment as a matter of law and motion for new trial, which the parties fully briefed.  The district court denied the motion on August 2, 2023.  Church Mutual timely filed its notice of appeal on August 29, 2023.

## II.    STANDARD OF REVIEW

We review de novo the district court's denial of a motion for judgment as a matter of law. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010).  We must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. *Id.*  "We will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence."  *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018) (quoting *Lambert v. Fulton County*, 253 F.3d 588, 594 (11th Cir. 2001)).

As to the alternative request for a new trial, we review only for an abuse of discretion. *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1407 (11th Cir. 2011).  "Deference 'is particularly appropriate where a new trial is denied, and the jury's verdict is left undisturbed.'"  *Id.*

## III.    ANALYSIS

On appeal, Church Mutual argues that (1) it was entitled to judgment as a matter of law because First Baptist did not prove a loss covered by the insurance policy, and alternatively, (2) it is entitled to a new trial because the verdict was against the great weight of the evidence and because the district court failed to properly instruct the jury on the burden of proof.

## A. Judgment as a Matter of Law

As a diversity case, we apply the substantive law of the forum state—here, Alabama, which the parties do not dispute. *Travelers Prop. Cas. Co. of Am. v. Talcon Grp. LLC*, 88 F.4th 1371, 1376 n.4 (11th Cir. 2023). "A contract of insurance, like other contracts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.,* 817 So.2d 687, 691 (Ala. 2001). The material elements necessary to establish a cause of action for breach of contract under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metal Co. v. Hill,* 825 So.2d 100, 105–06 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 303 (Ala. 1999)).

On appeal, Church Mutual asserts that First Baptist failed to produce evidence showing that the damages sustained by the Sanctuary and the Gym qualify as a "covered loss" under the insurance policy, and thus did not show that Church Mutual was obligated to make a payment on the claim. Church Mutual argues that the damage is not a covered loss because the cause of the damage was

not Hurricane Sally, but rather wear and tear, which is excluded from coverage under the policy.

In Alabama, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion. *See, e.g., Colonial Life & Accident Ins. Co. v. Collins,* 280 Ala. 373, 194 So. 2d 532, 535 (Ala. 1967); *U.S. Fidelity. Guar. Co. v. Armstrong,* 479 So. 2d 1164, 1168 (Ala. 1985). However, the insurer's burden to prove the applicability of an exclusion does not "shift[ ] the general burden of proof from plaintiff to defendant." *Belt Auto. Indem. Ass'n v. Ensley Transfer & Supply Co.,* 99 So. 787, 790 (Ala. 1924). Rather, "when the defendant has offered evidence showing prima facie that the case is one of specified nonliability, the burden of showing a case within the operation of the policy remains upon the plaintiff." *Id.*

Here, there was sufficient evidence to support the jury's verdict on the breach of contract claim. The voluminous evidence presented at trial by the opposing engineering experts, Michael Biller and Kurt Mulder, clearly presented issues of fact for the jury to decide, and the testimony offered by Mr. Biller was more than sufficient to satisfy First Baptist's burden of proving coverage under the policy. Mr. Biller, an expert qualified in structural engineering, provided extensive testimony as to his investigation, the factual data he considered, the conditions he observed, his opinion as to the cause of such conditions, and the basis for such opinions.

On appeal, Church Mutual claims that Biller's testimony cannot support the verdict because he was not a reliable expert. Appellant's challenge rests on Biller's supposed failure to: (1) personally visit the First Baptist property and (2) consider other factors that could have caused the loss. As an initial matter, any objection to Biller's methodology or reliability should have been raised at trial, which Church Mutual failed to do. Absent an objection below, we review the challenged expert testimony only for plain error. *Christopher v. Cutter Labs*. 53 F.3d 1184, 1192 (11th Cir. 1995).

Church Mutual has offered no case law or engineering standard to suggest that an engineering expert must render their opinion by first inspecting the property personally. In fact, in *Johnson v. State Farm*, No. 12-00534, 2013 WL 4607548 (S.D. Ala. Aug. 19, 2013), a case cited by Church Mutual, the engineer retained by State Farm to render an expert opinion did not personally inspect the damaged house. *Id*. at *10. Similarly, Mr. Biller sent two engineering interns for the initial inspection, which he explained is an accepted practice as his engineering inters meet the qualifications of an Authorized Representative. During their inspection, the engineering interns were working under the direct supervision of Mr. Biller. Ultimately, Mr. Biller did inspect the property personally and said that his inspection did not change his expert opinion. As to Biller's supposed failure to consider alternative causation theories, Biller stated that he reviewed Mulder's report, indicating that he did consider other causes of damage, having reviewed Mulder's conclusions and observations before rendering his own opinion.

Church Mutual's other argument, that First Baptist failed to prove damages, is also unavailing.  For one, it merely reiterates the same causation argument by alleging that Hurricane Sally was not the actual cause of the damages.  As discussed, however, First Baptist satisfied its burden of showing a covered loss under the policy. Additionally, Jason Nezat's extensive testimony as to the actual cash value of damage sustained to the Sanctuary and Gym buildings was sufficient to establish the amount of damages claimed by First Baptist.  Mr. Nezat, a qualified expert in the field of insurance adjusting, provided extensive testimony as to his inspection, the information he considered, the damage estimate he prepared using the industry standard Xactimate software, and the reasons for including items in his damage estimate.

Accordingly, a reasonable jury could have found, and did find, that the damages were caused by Hurricane Sally, and were therefore a covered loss under the insurance policy.  And "[w]e will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence." *Lipphardt v. Durando Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (alteration in original) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000)).  We thus affirm the district court's denial as to judgment as a matter of law.

## B.  Motion for a New Trial

Turning to the alternative request for a new trial, Church Mutual argues that the jury's verdict was against the great weight of the evidence and that the district court erred in instructing the

jury on the proper burden of proof.  Reviewing only for an abuse of discretion, we find no reversible error.  *See Salinas*, 650 F.3d at 1407.

In arguing that the verdict was against the great weight of the evidence, Church Mutual merely reiterates its challenges to Biller's expert testimony and again claims that First Baptist did not prove a loss that was covered by the policy.  As we concluded earlier, however, the evidence was more than sufficient to support the jury's verdict.  For the same reasons, the verdict was not against the great weight of the evidence.

The district court also did not err in instructing the jury as to First Baptist's burden of proof.  It is undisputed that the burden of proof was on First Baptist to establish coverage under the policy for damages claimed.  In reviewing jury instructions, we "look to see whether the charges, considered as a whole, sufficiently instruct the jury so that the jurors understand the issues involved and are not misled." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985).  The district court properly instructed the jury that First Baptist needed to prove every essential part of its claim by a preponderance of the evidence, including that First Baptist suffered a loss covered under its insurance policy with Church Mutual.  Church Mutual argues that the burden of proof instruction should have included some reference to expert testimony but cites no case to support that proposition.  The cases cited on this point, *Johnson v. State Farm Fire & Cas. Co.*, 2013 WL 4607548 (S.D. Ala. Aug. 19, 2013), and *Nix v. State Farm Fire & Cas. Co.*, 444 F.

App'x 388 (11th Cir. 2011), address only the requirement of expert testimony to survive summary judgment and do not address any related jury charge. And even if the instruction regarding the burden of proof should have included a reference to expert testimony, Church Mutual fails to show how such error caused prejudicial harm, which is required. *Pesaplastic*, 750 F.2d at 1525. We conclude that Church Mutual did not suffer prejudicial harm because, as discussed above, the issue of coverage under the policy was decided based on testimony from opposing experts.

## IV.    CONCLUSION

For these reasons, we affirm the district court's order denying the motion for judgment as a matter of law, or alternatively, a new trial.

**AFFIRMED.**